(No. 4893. May 31, 1928.)

MARY H. BRUCE, Appellant, v. J. J. OBERBILLIG, Respondent.

[268 Pac. 35.]

Vestal P. Coffin, for Appellant.

Hawley & Hawley, for Respondent.

BUDGE, J.—Appellant was plaintiff in the court below. She filed a complaint against respondent alleging an oral contract between herself and respondent, entered into in February, 1920, whereby she undertook to sell for respondent certain mining stock in a group of quicksilver mines

in consideration of the payment to her of commissions in cash, stock and a stock bonus; that she sold said stock to the extent of a considerable amount and received a part of the compensation due her under the said oral contract, but that there still remained due her certain cash commissions and shares of stock under a modification of her contract with respondent.

To the complaint a general and special demurrer was filed, as well as motions to strike and to require the complaint to separately state and number the causes of action. Prior to the time the demurrer and motions were to be heard it was agreed between the attorneys for the respective parties that the motions and certain parts of the demurrer would be waived, and that the complaint would be amended by interlineation and the case tried on the complaint so amended, without further or other amendments thereto. Thereafter the cause was tried to the court and a jury, and a verdict returned for appellant. A motion for new trial was granted, from which appellant prosecuted an appeal to this court, and the appeal was dismissed. Before the cause came on for retrial, appellant sought permission to amend her complaint by increasing the *ad damnum* clause, which was denied. After the filing of a second amended complaint and an answer thereto the cause was again tried, the trial court granting respondent's motion for nonsuit at the conclusion of appellant's case, and judgment was entered dismissing the action. The appeal is from the judgment, and the order denying appellant's motion for leave to amend her complaint by increasing the *ad damnum* clause.

The serious question before us is whether the court erred in entering judgment of nonsuit and in dismissing the action. If appellant was not entitled to a recovery on the merits, an amendment of her complaint as to the amount of damages prayed for would be immaterial.

It appears from the record that there were two contracts entered into between appellant and respondent in connection with the sale of stock issued by a number of companies

owning a group of quicksilver mines in the Yellow Pine mining district. The first was an oral contract, entered into in February, 1920, the second a written agreement dated March 16, 1921. Operating under the oral contract, appellant sold quite a considerable block of stock in the various companies. Prior to the date of the second contract, a corporation had been formed whereby the various properties owned by the several mining companies were acquired by a corporation known as the United Mercury Mines Company. After the organization of the latter company, appellant sold a considerable amount of its stock. It is appellant's contention that the two contracts mentioned are separate and distinct, and that under her performance of each she is entitled to certain commissions in cash and stock which she has not received. Respondent takes the position that under the written agreement referred to, of date March 16, 1921, and appellant's so-called offer to the stockholders and directors of the United Mercury Mines Company, which was accepted by the board of directors of such company, the prior oral contract was rescinded or merged into the written agreements, by the terms of which appellant received full compensation and settlement of all her claims against the United Mercury Mines Company and respondent. The written contract of March 16, 1921, provides that for services rendered appellant should have and receive 300,000 shares of stock of the United Mercury Mines Company, of which 144,000 shares had been issued, the balance to be issued at a later date or upon the raising of a specified amount of money in the sale of additional stock. Pertinent language of appellant's written offer to the stockholders and directors of the United Mercury Mines Company, of date June 25, 1921, is as follows:

"Early this year a plan of consolidating these companies or merging them into one company to be known as the United Mercury Mines Company was conceived and has at this time been practically carried out. Under the plans of this merger and consolidation the capital stock issued and

outstanding has been materially reduced by a compromise settlement with J. J. Oberbillig," et al.

"I had an understanding with Mr. Oberbillig that in event the compromise settlement was made with the above named parties I would be willing to materially reduce the number of shares of stock that I was to receive in settlement for my services and agreed with him that instead of receiving a large stock interest in the United Mercury Mines Company, I would, in the event of the settlement above mentioned, take a total stock interest, for services, of 300,000 shares. This number of shares Mr. Oberbillig agreed with me to be fair and equitable to all concerned and would reduce or decrease my holdings in about the same proportion as the holdings of the above named parties were reduced.

"Of this 300,000 shares there has up to this time been issued to me 140,000 shares, leaving a balance of 160,000 shares yet to be issued, . . . and if the stock is issued it will be issued with the understanding that I am pledging to the United Mercury Mines Company my continued efforts to finance its requirements whatever they may be, and that this issue to me of stock does and will cover any compensation for services rendered or to be rendered, save and except as to the cash commission to be paid on any and all sales reported in the future. . . . . "

There further appears in the record, its execution undenied, the following receipt and acquittance signed by appellant, dated November 29, 1922:

"Received from J. J. Oberbillig 12,000 shares of U. M. M. Co. in full settlement for M. M. commission and any and all claims against him or the Co."

This written release was signed long subsequent to all of the transactions alleged in appellant's complaint. It was upon the written contract of March 16, 1921, appellant's written offer to the stockholders and directors of the United Mercury Mines Company, and the receipt above quoted, acknowledging full settlement of all claims against respond-

ent or the company, that the trial court at the conclusion of appellant's case granted the motion for nonsuit.

 The writing of March 16, 1921, clearly had reference to the services rendered by appellant, and as we read its unambiguous terms, recited that for her services she was to receive 300,000 shares of the United Mercury Mines Company stock, part of which had been issued and the remainder to be issued upon the completion of certain other sales; and the same must be said of appellant's offer to the board of directors and the written release. It was a matter for the trial court to determine whether the prior oral agreement became merged in the later written stipulations (*Seitz v. Brewers Refrigerating Machine Co.*, 141 U. S. 510, 12 Sup. Ct. 46, 35 L. ed. 837; *Kempner v. Goddard Grocer Co.*, 5 Fed. (2d) 807; *Abbott v. Automobile Finance Co.*, 287 Pa. 505, 135 Atl. 223; *Creamery Package Mfg. Co. v. Duncan*, 136 Mo. App. 659, 119 S. W. 33; *Payne v. Commercial Nat. Bank*, 177 Cal. 68, 169 Pac. 1007, L. R. A. 1918C, 328), and we think the proper conclusion was reached with reference thereto.

 As well said in *Housekeeper Pub. Co. v. Swift*, 97 Fed. 290:

"What was the legal effect of the subsequent contract upon its predecessor? In the absence of fraud or mutual mistake—and the complaint contains no allegations sufficient to sustain a charge of either—there can be no doubt concerning the answer which ought to be given to this question under the law. The later contract covers the entire subject matter of the earlier one. It is complete in itself. It is inconsistent with the preceding contract. The two cannot stand together. . . . . A subsequent contract completely covering the same subject matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject."

We think the rule as above stated applies even though the prior oral contract had been performed in part. (*Goss v. Northern Pac. Hospital Assn.*, 50 Wash. 236, 96 Pac. 1078; *McCabe Const. Co. v. Utah Const. Co.*, 199 Fed. 976.)

To our minds it is shown beyond peradventure that under appellant's own pleadings and evidence she received everything to which she was entitled. Being of the view that the trial court did not err in granting the motion for nonsuit and entering judgment thereon, there' is no necessity of passing upon other points.

The judgment must be affirmed, and it is so ordered. Costs to respondent.

Wm. E. Lee, C. J., and Givens, Taylor and T. Bailey Lee, JJ., concur.

Petition for rehearing denied.