430 P.2d 883

**Clyde JOHNSON and Ruby Johnson, husband and wife, Plaintiffs-Appellants,**

v.

**Hugh SWEENEY, Defendant-Respondent.**

**No. 9920.**

Supreme Court of Idaho.

July 19, 1967.

Rehearing Denied Sept. 7, 1967.

J. H. Felton, Lewiston, for plaintiffs-appellants.

Ware, Stellmon & O'Connell, Lewiston, for defendant-respondent.

McQUADE, Justice.

A line fence in poor repair, extending approximately three-quarters of a mile, was a common border between land occupied by appellants, Clyde Johnson and his wife Ruby, and land occupied by respondent, Hugh Sweeney. Both parcels are located in Nez Perce County, Idaho, and at the time of concern each parcel was partly cultivated and partly used for pasture. From May until winter of 1965, cattle belonging to each party went back and forth through one of the fence's weakest parts and grazed on the other's land.

Appellants, alleging that respondent's cattle had trespassed, seized or "took-up" some of his herd under claim of lien, and brought an action for various items of property damage, including crop damage and feed for the "taken-up" cattle; respondent counterclaimed for crop damage caused by appellants' cattle and damages for alleged mistreatment of his cattle.

After trial, the district court found that before their cattle began grazing on each other's land, the parties had discussed a joint effort to repair the fence. During this discussion, which took place "early in the season of 1965," appellant-husband informed respondent that he, appellant-husband, could not work on the fence until that fall or winter (1965). Because of this, the court found, the parties agreed to postpone the fence repair until that fall or winter, and "acquiesced in the cattle of each party moving back and forth [meanwhile] between their respective lands."

In these circumstances, the court concluded, appellants were estopped from claiming damages caused by respondent's grazing cattle and were not entitled to a lien on the "taken-up" cattle or an allowance for their feed. Because respondent had likewise agreed that appellants' cattle could pasture on his land, the trial court de-

nied respondent the relief asked in his counterclaim. This is an appeal from that part of the judgment which denied the recovery sought by appellants.

■ The district court made several other findings and stated further grounds for its dismissal of appellants' claim, for example that the cattle had passed through the fence at a place which appellants had a duty to maintain so that their own neglect had caused appellants' loss. This Court has decided, however, for reasons hereinafter stated, that sufficient evidence supports the district court's findings regarding the cross-pasture agreement, and that having agreed, appellants cannot prevail in the present action. Thus, the trial court's other findings and appellants' objections to them need not be considered. See Bistline v. Eberle, 88 Idaho 473, 478, 401 P.2d 555, 558 (1965); cf. Layrite Products Co. v. Lux, 91 Idaho 110, 416 P.2d 501, 506–507 (1966); Idaho R.Civ.P., 61.

The facts pertinent to the trial court's finding regarding the parties' agreement to permit cross-pasturing are as follows.

Appellants had occupied a parcel of about three hundred acres for approximately ten years when respondent, in the early part of May 1965, leased nearly five hundred acres, part of which has a common boundary for approximately three-quarters of a mile with appellants' property. Soon after this, respondent discussed with appellant-husband the need for repair of a fence on the boundary line. No witnesses were present at their conversation, and there is conflict in the testimony regarding what was said.

Both respondent and appellant-husband testified that they had decided to repair the fence in a joint effort, but not until the fall or winter when appellant-husband would be free to assist. Respondent testified also that he and appellant-husband agreed meanwhile to permit each other's cattle to graze on both their lands.[1] Appellant-husband testified, to the contrary, that no agreement for cross-pasturing had been reached, but his version of the conversation is somewhat ambiguous. In direct testimony, he said that respondent had suggested cross-pasturing, but since he had fewer cattle and more crops than respondent, he had refused, telling respondent "if he [respondent] would bring a cat [tractor] * * * I would rent it and clear the brush out of the fence row and we would build a new fence * * * [but] he never did bring a cat and there hasn't been no [sic] fence built yet." His cross-examination, however, contains the following:

"Q Yes. Now during that conversation, was anything mentioned about

1. Respondent's testimony contains the following:
"A * * * so then we walked over to the fence and it was in need of repair all the way along, not only this half, but the whole fence up to—we didn't look at the fence near his pasture by the house at that time, so I said, 'Well, we ought to repair it. If you want to repair your half of the fence, I'll repair my half and we'll get it all lined up.' Well, he said he couldn't do anything until fall with it * * *.
"Q This would be for the entire fence line?
"A Yeah, the entire fence line, all of it, so we would have a decent fence in there, see, and I said I would be happy to do that, whenever he was ready he should holler and I'd get it lined up, see, and that was the last—that is the only discussion we had at that time.
"Q Did Mr. Johnson say anything about when he would be able to do that?
"A In the fall, couldn't do it until fall, he said, so I said, 'Well, if that is the case if some of your cattle get in mine and some of mine get in yours, why it will be all right if that is all right with you. You can let them eat some of mine and if mine come down there and eat in yours, that will be all right then.' That is what he said—
"Q And that was agreed that that would be all right?
"A That is right.
"Q Was there anything said about chasing cattle back and forth if the need arose?
"A No."

you not being able to repair the fence right then?

"A Yes, I told him that I couldn't build fence that time of year. I had too much work to do.

"Q And you said that the fence would have to be built in the fall, did you not?

"A Yes.

\* \* \* \* \* \*

"Q But the idea was still you were going to repair the fence in the fall, isn't that correct?

"A Well, in the later date, yes, winter."

And although appellant-husband on cross-examination insisted that he had not agreed to respondent's cross-pasturing suggestion he did not say how he had expected to keep his cattle on his land and respondent's cattle off it, from May or June 1965, until that fall or winter.

At no time prior to this action, after respondent had taken possession of the adjoining field, did appellant-husband attempt to repair the fence:

"Q Now did you [appellant-husband] ever do anything about—yourself about repairing the fence between those fields?

"A Well, I chased the cattle out two or three times and I propped the posts back up a little bit and cut some brush and poked in one place there one time or two different times, but there was so many places that there is—and like you say—like I said, I couldn't build a fence at that time of year."

Respondent, on the other hand, did repair some parts of the fence.

The conversation between appellant-husband and respondent about fence repair had been during May or early June 1965, and all during that summer the parties' cattle grazed on each other's land. During the summer, appellant-husband harvested a hay crop for respondent, and although he testified that he had objected orally "many, many times" to respondent, the first tangi-

ble indication that he disapproved of the presence of respondent's cattle on his land did not occur until August 27, 1965, when he "took-up" seven of respondent's cows. It may be noted that just before he "took-up" the cattle, he had argued with respondent about some roofing material.

Respondent, in his testimony, described the argument as follows:

"He [appellant-husband] was going to load some roofing [which he had purchased from respondent] that was on the forklift but they hadn't started to load the roofing yet so he already owed the company more money than he had coming and so I stopped him from loading the roofing and said, 'Don't load any more of the roofing unless you want to pay for it and will [sic] settle the thing—don't load any more,' and then he called me a foul name and that was the end of that."

Appellant-husband testified on cross-examination,

"A \* \* \* they were loading this roofing up and he [respondent] came out and stopped them and he wouldn't let me have the rest of this roofing that I had bought and paid for. It was paid for. I had done the baling and it was paid for. He had signed the bill for it and he wouldn't let me have it and my house still don't have a roof on it.

"Q And you got quite angry at the time, did you not?

"A I think I was, yes.

"Q And you saw Mr. Felton [appellants' attorney in the present action] shortly after that?

"A Yes."

That there was an absence of serious dispute about the grazing cattle until the end of August 1965, corroborates respondent's testimony that the parties had agreed to permit cross-pasturing until repair of the line fence in fall or winter 1965. Nor is an opposite conclusion compelled by appellant-husband's testimony that never would he have agreed to cross-pasturing

because his herd was smaller and his land better cultivated than respondent's, for although respondent had the larger herd and relatively less crops, nevertheless, not all of his land was contiguous to appellants' land, and the record contains suggestions that the pasture quality of respondent's land was extremely high and that appellants had separate protective fences around their crops.

 Credibility of witnesses and inferences to be drawn from evidence are for the trial judge, and his findings of fact will not be set aside unless clearly erroneous. Idaho R.Civ.P., 52(a). The record in the present action adequately supports the finding that the parties agreed to permit each other's cattle to cross-pasture until appellant-husband became free to help repair the line fence. Having so agreed, appellants cannot maintain their present action for damages based on the natural conduct of respondent's grazing cattle.

Judgment affirmed. Costs to respondent.

SMITH, McFADDEN and SPEAR, JJ., and DONALDSON, D. J., concur.