525 P.2d 976

**COMMERCIAL CREDIT CORPORATION, a foreign corporation, Plaintiff-Appellant,**

v.

**CHISHOLM BROS. FARM EQUIPMENT CO., an Idaho corporation, Defendant-Respondent.**

**No. 11168.**

Supreme Court of Idaho.

July 12, 1974.

Rehearing Denied Sept. 6, 1974.

Harry Turner, Twin Falls, for plaintiff-appellant.

William A. Parsons, of Parsons & Smith, Burley, for defendant-respondent.

SHEPARD, Chief Justice.

This is an appeal from a judgment in favor of a defendant in an action in which recovery was sought on a contract of continuing guaranty. Following trial the district court granted a motion for involuntary dismissal and rendered judgment for the defendant on the merits. We reverse.

Plaintiff-appellant Commercial Credit Corporation conducts a financing business and the defendant-respondent Chisholm Bros. is a corporation engaged in the sale and service of trucks, automobiles and farm equipment. Prior to the present dispute the parties had been dealing with each other for approximately ten years during which Commercial Credit regularly purchased notes, conditional sales contracts and other security instruments from Chisholm Bros. On June 12, 1958, the parties hereto executed a written instrument designated as "Reserve Agreement."[1] By the terms of the instrument Chisholm Bros. agreed to sell to Commercial Credit "acceptable notes, conditional sale contracts" or other security instruments which it might acquire from purchasers of new or used vehicles. Certain provisions of the instrument required certain actions to be taken by Commercial Credit within stated time limits after any default by a purchaser prior to any liability attaching to Chisholm Bros. It is clear thereby that Chisholm Bros. assumed the role of a continuing conditional guarantor.

We note initially that the provisions of the Uniform Commercial Code are not applicable to the instant case since the instruments in question herein were executed prior to the effective date of the Code in Idaho. The law in effect at the time of the execution of the documents must govern. I.C. § 28–10–101, 28–10–102.

A guaranty is an undertaking or promise on the part of the guarantor which is collateral to a primary or principal obligation on the part of another and which binds the obligor to performance in event of nonperformance by the other. Durant v. Snyder, 65 Idaho 678, 151 P.2d 776 (1944). A contract of continuing guaranty contemplates a future course of dealing covering a series of transactions extending over an indefinite time. Stearns, Law of Suretyship, § 4.7, p. 67 (5th ed. 1951). While an absolute guaranty is an uncondi-

---

1. "6. The conditions and provisions of this agreement shall not apply to instruments, the payment of which is fully guaranteed in any manner by us [Chisholm Bros.].

\* \* \* \* \*

"9. This Agreement constitutes the entire agreement between the parties and may not be amended in any manner except in writing signed by the parties hereto.

\* \* \* \* \*

"13. We [Chisholm Bros.] hereby unconditionally guarantee any Instruments and waive protection against loss resulting from conversion, confiscation or collision covering new or used cars under the following circumstances:

\* \* \* \* \*

"(4) loss results from our [Chisholm Bros.'] failure, when required by State laws, to properly file or record purchaser's obligation or obtain certificate of title showing your lien, or both."

tional undertaking on the part of the guarantor that he will pay the debt or perform the obligation immediately upon the debtor's default without any necessity to first exhaust the principal, Stearns, Law of Suretyship, *supra*, a conditional guaranty expressly or impliedly contemplates as a condition precedent to the guarantor's liability the happening of some contingent event or the performance of some act on the part of the creditor. Stearns, Law of Suretyship, *supra*, § 4.6.

In December 1967, while the reserve agreement was in force, a customer of Chisholm desired to purchase an automobile other than the brand sold by the defendant. He located a car at a Colorado dealership but needed to secure financing. Chisholm Bros. undertook to obtain the necessary financing from Commercial Credit. On December 15, 1967, Chisholm Bros. and their customer entered into a conditional sales contract on the form provided by Commercial Credit. Chisholm was denominated "seller" and the customer as "purchaser." The total alleged purchase price was $6,350.30 due and payable on December 12, 1968.

Chisholm delivered the conditional sale contract to Commercial Credit and Commercial Credit issued a check for $5,773.00 payable to Chisholm. Chisholm endorsed the check and delivered it to the customer who in turn paid the funds to the Colorado car dealership and received possession of the automobile and its *unencumbered title.*

The contract contained the following language:

"Accepted: and this contract hereby is assigned in accordance with the plan marked below and under the terms of the assignment on the reverse."

The words "plan marked below" referred to a section on the face of the instrument which permitted Chisholm Bros. to designate its choice of the extent of its liability as guarantor of the debt of the purchaser. The first alternative was "conditionally without recourse" which would have imposed liability upon Chisholm only to the extent of the buy-back provisions of the reserve agreement and would have incurred more extensive liability only in the event of breach of warranty. The second alternative was "with recourse" which, if designated, would have imposed on Chisholm absolute liability for every delinquency or default regardless of its own compliance with the terms of the assignment. The instrument provided a box beside each of the alternatives in which a check mark should have been placed but Chisholm failed to check either alternative. The district court properly found that the failure of Chisholm to so indicate the extent of its liability was an omission rather than an ambiguity and that the evidence presented by the parties to explain the omission still left the question unresolved.

It is undisputed that Chisholm did not secure compliance with the provisions of either Idaho or Colorado law for the protection of a security interest in the vehicle against subsequent purchasers or encumbrancers.[2] No payments were made by the customer under the conditional sale contract and after December 12, 1968, the customer was in default. The customer was not found within the State of Idaho and the car had been sold to a bona fide purchaser, apparently in Colorado.

Commercial Credit brought this action to recover the unpaid balance on the contract from Chisholm Bros., alleging the conditional sale contract, the assignment of that contract for consideration, the customer's default, the "unconditional guaranty" provisions of the reserve agreement, Chisholm's failure to protect Commercial Credit's security interest in the vehicle and Commercial Credit's resulting damage.

2. Because it is conceded that nothing was done by Chisholm to perfect a security interest under the laws of either Colorado or Idaho we are not required to consider the need for a choice of Idaho or Colorado law. Further, neither party has at any time requested either court to take judicial notice of Colorado law.

At the conclusion of the trial, the district court concluded that the liability, if any, of Chisholm could not be determined without the court in effect making a contract for the parties. Therefore upon motion the district court ordered involuntary dismissal and entered judgment on the merits for the defendant.

In our view the district court was correct in concluding that no liability to Chisholm as guarantor arose under the provisions of the conditional sale contract and its assignment. As a result of a material omission the guarantorship options on the face of the conditional sale-assignment instrument are of no force and effect. The printed words which describe the alternative degrees of liability are only surplusage. This court stated in Taysom v. Taysom, 82 Idaho 58, 349 P.2d 556 (1960), that the trial court therein was correct in finding:

"* * * omissions which cannot be ascertained from a reading of the contract. Evidence introduced by the parties left all such and similar questions unsolved and in uncertainty. This Court is not at liberty to determine such essentials for the litigants. What is to be included in a contract is not for the court to determine, * * *." 83 Idaho at 63, 349 P.2d at 559.

If Chisholm is to be held liable to Commercial Credit as a guarantor of its customer's debt such liability can only arise under the provisions of the 1958 reserve agreement. In that agreement Chisholm agreed to:

"13. * * * unconditionally guarantee any Instruments and waive protection against loss resulting from conversion, confiscation or collision covering new or used Cars under the following circumstances:

* * * * * *

"(4) loss results from our [Chisholm Bros.'] failure, when required by State laws, to properly file or record purchaser's obligation or obtain certificate of title showing your lien, or both."

As hereinabove noted said reserve agreement was to constitute the entire agreement between the parties and could not be amended in any manner except in writing signed by the parties.

Where a contract is clear and unambiguous a determination of its meaning and legal effect are questions of law for determination by the court. Parks v. City of Pocatello, 91 Idaho 241, 419 P. 2d 683 (1966). The reserve agreement clearly and unambiguously provided that in the absence of a subsequent agreement in writing Chisholm was liable to Commercial Credit if a loss of the collateral and security interest through conversion, confiscation or collision resulted from the failure of Chisholm to comply with relevant state law.

Chisholm's failure to protect Commercial Credit's security interest by filing or recording notice of the security interest or lien enabled the customer to make a sale of the car to a bona fide purchaser without the permission of Commercial Credit. Such a sale was a conversion. Casper v. Spaulding, 78 Idaho 282, 301 P.2d 1097 (1956). As noted above the incomplete guaranty provisions on the conditional sale document are only surplusage and we must reject Chisholm's assertion that such guaranty provisions be construed as a writing which modified the parties' earlier 1958 agreement and evidenced the parties' intent that Chisholm was to be absolved of any and all guaranty liability resulting from the transaction in question.

The judgment of the district court is reversed and the case remanded with instructions to enter judgment in favor of appellant. Costs to appellant.

DONALDSON, McQUADE, McFADDEN, JJ., concur.

BAKES, Justice (concurring specially):

The majority opinion has reached the right result in this matter, but for the wrong reason, in my opinion. In order to find liability under paragraph 13 of the re-

serve agreement, it was necessary for the majority to find that there was a conversion resulting from Chisholm Bros.' failure to properly file or record the purchaser's obligation or obtain a certificate of title showing the lien. The majority concludes that:

"Chisholm's failure to protect Commercial Credit's security interest by filing or recording notice of the security interest or lien enabled the customer to make a sale of the car to a bona fide purchaser without the permission of Commercial Credit. Such a sale was a conversion."

The foregoing statement assumes that Commercial Credit had a security interest in the vehicle because without such a security interest there could be no conversion. However, the uncontroverted facts found by the trial court show otherwise. The trial court found that:

"Prior to December 15, 1967, and while the Reserve Agreement was in force, one Ike Ridenhour, a friend and potential business associate of John F. Chisholm, president of defendant company, desired to purchase an auto—a brand other than those sold by defendant. He found a 1968 Chrysler Imperial in Denver, Colorado at the Mike Stroud Agency, but he needed auto financing. The price was $7,300.00, less $1,527.00 trade-in, plus a time-price differential of $577.30. The defendant, through its president, undertook to obtain the necessary financing in the following manner:

"Defendant and Ridenhour, on December 15, 1967, entered into a conditional sale contract wherein defendant was denominated 'seller' and Ridenhour, 'purchaser.' (See Plaintiff's Exhibit No. 2.) The total price of $6,350.30 was due and payable December 12, 1968.

.    .    .    .    .    .

"Defendant delivered the conditional sale contract to the plaintiff at its Twin Falls branch office, without ever having marked either box to indicate its election of assignment plan. In return, plaintiff delivered its check for $5,773.00 to the defendant.

"Defendant then endorsed the check over to Ike Ridenhour and delivered it to him.

"[This is a sequel case to No. 9301, Commercial Credit Corporation vs. John F. Chisholm, decided in this Court on April 13, 1971. In that case we learned that Ridenhour delivered the money to the Colorado auto agency and received possession of the auto and its unencumbered title. Also we learned that the car had been subsequently sold to a bona fide purchaser and that Ridenhour is not within the state of Idaho.]" Memorandum Opinion, Clerk's Tr., Vol. 2, pp. 13–14.

At the time the conditional sales contract, plaintiff's exhibit A, was executed by the purchaser Ridenhour, and seller Chisholm Bros., neither one of them owned any interest in the automobile in question. The automobile was owned by a Denver agency. The conditional sales contract could not have created any security interest in the vehicle since neither the purchaser Ridenhour nor the seller Chisholm Bros. owned any interest in the automobile when they signed it. Therefore, there is no basis for the majority's conclusion that when Ridenhour sold to a third party the car which he purchased from the Denver agency with the proceeds of the loan which Commercial Credit gave to Chisholm Bros., that there was a conversion under paragraph 13 of the reserve agreement.

However, I believe that Chisholm Bros. were liable under the conditional sales contract. It is uncontradicted that Ridenhour as a purported purchaser, and Chisholm Bros., as a purported seller, executed the conditional sales contract[1] and sold the

1. In addition to signing as President of Chisholm Bros. Farm Equip. Co., seller, John F. Chisholm also signed as a "purchaser" below the signature of Ike Ridenhour. Nothing in the record explains why he was not joined individually as a defendant.

contract to Commercial Credit having signed the following assignment provision:

"Accepted: and this contract hereby is assigned in accordance with the plan marked below, and under the terms of the assignment on the reverse.

"SELLER   Chisholm Bros. Farm Eqpt. Co.

"BY   John F. Chisholm TITLE President"

While the trial court was correct that the parties did not mark which of the two plans it was assigned under, i. e., whether the assignment was with or without recourse, and that therefore the court could not supply that provision of the contract, nevertheless the assignment provision provides that the assignment was made "under the terms of the assignment on the reverse." That assignment provision on the reverse reads as follows:

"FOR VALUE RECEIVED, Dealer hereby sells, assigns and transfers to Commercial Credit Corporation, its successors and assigns, the contract on the reverse side hereof, and all of Dealer's right, title and interest in and to the vehicle referred to therein, with power to take legal proceedings in the name of Dealer or itself.

"Dealer warrants that: *the contract is genuine and constitutes the entire agreement with the Purchaser*; the Purchaser is of legal age and competent; the contract is legally enforceable against the Purchaser named therein; the down payment was made by the Purchaser in cash and not its equivalent, unless otherwise noted in the contract; no part of the down payment was loaned to the Purchaser, directly or indirectly by Dealer or anyone connected with Dealer; unless noted herein, Dealer has no reason to believe that Purchaser ever violated any laws concerning liquor or narcotics or that Purchaser was ever rejected by any finance company, bank or banker; Dealer has complied with all laws with respect to the sale of the Ve-

hicle; *by this assignment, Dealer transfers clear title to the Vehicle, subject only to the contract; the lien represented by the contract appears on the Certificate of Title or Bill of Sale, as required by State law covering the Vehicle as a first lien or encumbrance*; there is now owing the amount set forth therein; and that all the obligations of Dealer contained in the contract have been fully performed. Dealer makes said warranties for the purpose of inducing Commercial Credit Corporation to purchase the contract, and if any of such warranties should be untrue, Dealer shall buy the contract from Commercial Credit Corporation, upon demand, and will pay therefor, the amount unpaid to Commercial Credit Corporation thereon, plus any and all costs and expenses paid or incurred by Commercial Credit Corporation in respect thereto. Said remedy shall be cumulative and not exclusive and shall not affect any other right or remedy that Commercial Credit Corporation might have at law or in equity. Dealer agrees that Commercial Credit Corporation, by purchasing the contract, shall not be deemed to have assumed any of the obligations of Dealer thereunder which are executory.

"Commercial Credit Corporation is hereby authorized to correct patent errors in said contract and all other papers executed, endorsed or assigned in connection therewith." Plaintiff's Exhibit A. (Emphasis added).

The dealer warranty provisions of that "Dealer's Assignment" were violated in at least two respects by Chisholm Bros.: (1) the contract was of questionable genuineness, since the seller never owned the vehicle which the contract purported to sell; (2) the dealer wasn't transferring any title, and the lien didn't appear on the title because the seller never owned or controlled the automobile in question or its title.

Therefore, judgment should have been rendered in favor of the plaintiff against

the defendant Chisholm Bros. for the breach of warranties contained in the assignment provision of the conditional sales contract, plaintiff's exhibit A.