597 P.2d 1070

**COUGAR BAY COMPANY, INC., an Idaho Corporation, Plaintiff-Respondent,**

v.

**Jimmie L. BRISTOL and Donald W. Bristol, a partnership dba Bristol Brothers and dba Pappy's Pizza, Defendants-Appellants.**

No. 12452.

Supreme Court of Idaho.

July 23, 1979.

10. *See* n. 8, *supra*.

James W. Givens, Lewiston, for defendants-appellants.

Scott W. Reed, Coeur d'Alene, for plaintiff-respondent.

DONALDSON, Chief Justice.

Defendants-appellants, Jimmie and Donald Bristol, d/b/a Bristol Brothers, a partnership, as well as Pappy's Pizza, Inc., bring this appeal from an adverse decision on the merits in district court in favor of the plaintiff-respondent, Cougar Bay Company, Inc. The Bristols appeal results from an action involving the foreclosure of a materialman's lien as a result of a contract to construct a Pappy's Pizza restaurant in Kellogg, Idaho.[1]

In the fall of 1973, the Bristols engaged an architect to prepare preliminary draw-ings for a pizza restaurant to be located upon leased premises in Kellogg. From its inception the restaurant was to be an essentially prefabricated modular structure which would serve as a prototype model for other Pappy's Pizzas to be constructed in other areas in the future. The architect drafted outline specifications for the project in October 1973.

In January 1974, Loren Murphy, vice president of Cougar Bay, began meeting with the Bristols to discuss preliminary plans for the construction of the prototype prefabricated Pappy's Pizza in Kellogg. These meetings together with the architect's preliminary drawing led to Cougar Bay's submission of a written "estimate" on January 30, 1974 estimating the price for construction of the project to be $70,000. Then, on April 30, 1974, Cougar Bay submitted a "summarized projected cost breakdown" for the Kellogg restaurant estimating the cost of construction to be $82,044, including a $7,000 contractor's fee.

By a written agreement dated May 13, 1974, Cougar Bay and the Bristols contracted for the construction of the pizza parlor on the basis of Cougar Bay's April 30 projected cost breakdown and their estimate of the total cost of construction ($82,-044). Under the terms of that contract Cougar Bay agreed to commence construction of the project immediately. In return, the Bristols agreed to advance Cougar Bay $10,000 and to secure financing within 90 days of the contract date. If the Bristols obtained financing, the work would proceed in accordance with the plans of the architect; although at the time the parties entered into this agreement, there were no written specifications in existence. Cougar Bay also guaranteed the labor costs would not exceed $21,528 by more than ten percent. Cougar Bay began construction shortly after May 13.

During the initial stages of construction the Bristols sought to secure financing for the project in the amount of $81,304

---

1. The Bristols leased certain property upon which to build this restaurant. Matters involving this lease and another defendant, First Na-tional Bank, were resolved at the time of trial and are not concerned in this appeal.

through the Small Business Administration. (SBA) The testimony elicited at trial indicates that the SBA, as a precondition to approving the Bristols' loan, required them to execute a standard American Institute of Architects contract. (AIA contract) Mr. Murphy of Cougar Bay supplied the Bristols with this form contract which provided among other things that the basis of the payment would be the cost of the work plus a fee. Pursuant to the AIA contract the parties agreed, by virtue of the deletion of section 5.2, that there would be no guaranteed maximum cost on the project; rather, they agreed to an "estimated maximum cost" of $82,044 as per the April 30 projected cost breakdown. The AIA contract also provided for the $7,000 contractor's fee as well as provision for the charge (cost of additional work plus 10%) for any changes in the work during its progress.

The date of the parties' execution of the AIA contract was completely in dispute at trial. Cougar Bay contended that the parties signed it in August on or about the time that it took out a cost bond on the project as required by the SBA. The Bristols argued that they executed it on the date indicated on the first page of the AIA contract—April 30, 1974. The trial court found that the preponderance of the evidence indicated that the parties executed the AIA contract in August, 1974.

By November 1974, Cougar Bay had substantially completed the Kellogg Pizza project. Upon completion Cougar Bay presented a final billing, with cost itemization, to the Bristols. The total cost of the work including the cost for work changes and the contractor's fee was $115,348.68. The Bristols acknowledged an increase of $16,215.67 representing charges for work changes, and have paid Cougar Bay a total of $98,259.67. However they contended at trial and now contend on appeal that their obligation should not exceed the $98,259.67 already paid which is the sum of the $82,044 maximum estimated cost and the charge for extra work done.

Cougar Bay then filed a materialman's lien for the balance which the Bristols re- fused to pay in February 1975 and filed its complaint to foreclose the lien on May 30, 1975. The Bristols answered with a general denial, setting forth the affirmative defense of payment for all services rendered. The case was set for trial without a jury on March 1, 1976. Prior to trial, counsel for the Bristols withdrew from the case. The newly retained counsel attempted to file an "amended answer" two days before the trial and 211 days after the first answer had been filed. In essence the "amended answer" set forth counterclaims against Cougar Bay in the total amount of $600,798.91.

The trial judge denied the motion to amend and the action went to trial. At the conclusion of the trial and upon submission of briefs, the court issued a memorandum decision to the effect that the Bristols were indebted to Cougar Bay in the amount of $14,489.01 and that the lien should be foreclosed in that amount. The court signed findings of fact which were in conformity with the memorandum decision. The Bristols filed a motion for a new trial which the trial judge denied. The Bristols then brought this appeal. We affirm.

The Bristols in their appellate brief present ten issues on appeal. However it is our opinion that to dispose of this appeal requires only consideration and discussion of two areas: first, whether the trial court erred in denying the Bristols' motion to amend their answer and second, whether there is substantial and competent evidence in the record to support the trial court's findings of fact and conclusions of law.

With regard to the first issue we note that the decision of whether to permit amendment of a pleading is vested in the sound discretion of the trial court. The *Idaho First National Bank v. Wells*, Idaho, 596 P.2d 429 (1979); *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978); *Jones v. Watson*, 98 Idaho 606, 570 P.2d 284 (1977). This is especially true in the situation where a pleader fails to set up a counterclaim through mistake, inadvertence or excusable neglect. In such a situation the trial court *may*, if justice so requires, give the pleader leave to set up the counterclaim by amendment. I.R.C.P. 13(f).

■ In the instant case, newly retained counsel for the Bristols attempted to set up counterclaims against Cougar Bay in excess of $600,000 by amendment to the Bristols' answer two days prior to trial. In denying this motion the trial judge stated:

"Well, I note here that the original answer was filed on August the 1st, and that these defendants at least were prepared to go to trial on the 1st of December. The thing that strikes me is that this amended answer is a massive change in the issues that would be presented here. If I allowed the filing of the amended answer, I would have to allow the other parties the right to invoke in additional discovery procedures because it raises completely new issues that were not raised before. I think under these circumstances—I'm recognizing the fact that, Mr. Givens, you filed these as rapidly as you probably could have. I think it would cause a great injustice to the other defendants and the other parties, excuse me, if we had to again delay this matter because I am sure that the discovery proceedings involving this amended answer would probably take 60 to 90 days to complete. I think where they were prepared to go to trial before on the basis of the old answer that was filed in August, I would have to deny the motion to amend at this point so we will proceed with the pleadings as they were previously established."

The trial judge's assessment of the consequences of delay was an appropriate factor to consider in the exercise of his discretion. Thus the trial judge did not abuse his discretion in denying the Bristols' motion to amend their answer to set up counterclaims against Cougar Bay.

■ In turning to the question of the sufficiency of the record to sustain the trial court's findings of fact and conclusions of law, we limit our review to whether there is substantial, competent, although conflicting evidence, in the record to support these findings. Where such evidence exists we

will not disturb the trial court's findings on appeal. I.R.C.P. 52(a); *Industrial Investment Corporation v. Rocca,* 100 Idaho 228, 596 P.2d 100 (1979); *Skelton v. Spencer,* 98 Idaho 417, 565 P.2d 1374 (1977); *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 513 P.2d 627 (1973). Such evidence does exist in this case, and we affirm the trial court's judgment in favor of Cougar Bay.

■ is clear from the record that the Bristols and Cougar Bay did execute the AIA contract which provided for "cost of the work plus a fee." While the date the parties executed that contract was in dispute, there is substantial evidence to support the trial court's finding that the parties executed the AIA contract in August of 1974. As a contract into which the parties entered subsequent to the contract signed on May 13, 1974, the AIA contract superseded all prior agreements and governed all payments and conditions of the construction which Cougar Bay performed for the Bristols. In response to the question of the effect of a subsequent contract upon its predecessor, this Court, as early as 1928, has taken the position that:

"In the absence of fraud or mutual mistake . . . there can be no doubt concerning the answer which ought to be given to this question under the law. The later contract covers the entire subject matter of the earlier one. It is complete in itself. It is inconsistent with the preceding contract. The two cannot stand together. . . . A subsequent contract completely covering the same subject matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject." Citing *Housekeeper Pub. Co. v. Swift,* 97 F. 290 (8th Cir. 1899). *Bruce v. Oberbillig,* 46 Idaho 387, 393, 268 P. 35, 37 (1928).

Here there was no evidence of fraud or mutual mistake and therefore the later con-

tract supersedes and is substituted for the earlier contract.

Judgment affirmed.

SHEPARD, BAKES, McFADDEN and BISTLINE, JJ., concur.