625 P.2d 1085

**John A. PIERSON, Plaintiff-Appellant,**

v.

**Gail JONES, Defendant-Respondent.**

**No. 13231.**

Supreme Court of Idaho.

March 2, 1981.

Rehearing Denied April 23, 1981.

James T. Jones, of Seeley, Jones & Fuller, Jerome, for plaintiff-appellant.

Frederick F. Plankey, Twin Falls, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a judgment in favor of defendant-respondent Gail Jones in an action brought by plaintiff-appellant John Pierson to hold Jones personally liable for a corporate debt. We affirm.

Jones operated a sheet metal business as a sole proprietorship until it was incorporated in September of 1975. At that time, Jones transferred the assets of that business to a corporation in exchange for an equal amount of stock for himself and his wife. The building in which the business was located and which is a partial subject of this action was owned by Jones and was not transferred to the corporation.

Jones and his wife were the only directors at the outset of the corporation, although the by-laws required three directors. In June, 1976, Jones and his wife were divorced and under the property settlement Jones was to receive all interest in the corporation and any non-corporate property used in the business. Shortly before that decree of divorce, Jones held a corporate meeting at which the corporation was authorized to borrow $90,000 from appellant John Pierson. At that time Jones represented that he was the sole director and shareholder of the corporation. It was not until August of 1976 that the corporate by-laws were amended to permit fewer than three directors.

Appellant Pierson was an employee of the corporation from July, 1976 to December, 1976, and in such capacity he had occasion to work with and check the business records of the corporation on a daily basis. During that period of time Pierson loaned the corporation $80,571.42. Prior to making those loans, Pierson was aware that he was dealing with a corporation, had reviewed a corporate financial statement of May 31,

1976, and was aware that the building in which the business was conducted was not a corporate asset. Although security for the Pierson loans was discussed between Jones and Pierson, a security device tendered by Pierson was never executed by Jones.

The business began sustaining financial losses and on February 9, Pierson's attorney threatened suit against the corporation and Jones if a security interest for the Pierson debt was not obtained. On February 10, 1977, Jones assigned corporate accounts receivable of $34,000 to Pierson. Jones and Pierson discussed the possibility of Jones obtaining a second mortgage on the building to obtain money to repay the loan to Pierson, but Jones was unable to obtain that mortgage financing. The corporation filed bankruptcy on June 24, 1977, at which time it owed Pierson $33,187.64. This action was instituted by Pierson against Jones personally to recover that sum and obtain an equitable lien against the building owned by Jones.

Following trial, findings of fact and conclusions of law were issued indicating that the evidence did not justify piercing the corporate veil; that respondent did not personally guarantee the corporate loan; and that Pierson was not entitled to an equitable lien on the real property of Jones. Jones was also awarded attorney fees.

■ On appeal, Pierson contends that Jones did not have authority to borrow money for the corporation; that the trial court erred in not piercing the corporate veil, in not finding that Jones had personally guaranteed the corporate debt, in not imposing an equitable lien on the real property owned by Jones and in awarding attorney fees against Pierson.

We find nowhere in the corporate by-laws or articles any requirement that the board of directors were required to approve the obtention of borrowed money nor is there any express prohibition against an officer of the corporation so borrowing money. Jones was the President-General Manager of the business and as such was entrusted with the entire management and control of the business. In the absence of any re-quirement requiring such approval, the general rule is that such an officer has implied authority. *Phoenix Finance Corp. v. Iowa-Wisconsin Bridge Co.*, 2 Terry 130, 16 A.2d 789 (Del.Super.Ct.1940); *Petition of Mulco Products*, 11 Terry 28, 123 A.2d 95 (Del.Super.Ct.1956). *See* 19 C.J.S., Corporations, § 1059; F. Kempin & J. Wiesen, Legal Aspects of the Management Process 434 (2d ed. 1976); Annot., 57 A.L.R.2d 1215 (1957).

It is held that to justify piercing the corporate veil, " * * * it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person has ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Hayhurst v. Boyd*, 50 Idaho 752, 761, 300 P. 895, 897 (1931). *See Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Here the trial court held that the facts disclosed by the evidence did not, as a matter of law, justify piercing the corporate veil. We find ample, substantial and competent evidence to support those findings upon which the trial court based its conclusion.

■ Pierson also asserts that the corporation was undercapitalized at the time he lent it money and that this is a justification for piercing the corporate veil. We disagree. It is held that undercapitalization is one factor to be considered in determining whether or not to pierce the corporate veil. *Minton v. Cavaney*, 56 Cal.2d 576, 15 Cal. Rptr. 641, 364 P.2d 473 (1961); Annot., 63 A.L.R.2d 1051 (1959). However, financial inadequacy is measured by the nature and magnitude of the corporate undertaking or the reasonableness of the cushion for creditors at the time of the *inception* of the corporation. H. Henn, Law of Corporations § 146 (2d ed. 1970). Here the corporate accountant testified that at the time of its inception the corporation was not undercapitalized. Clearly, a corporation adequately capitalized at its inception can become undercapitalized at a later time for any of a variety of legitimate reasons.

Appellant Pierson also contends that Jones personally guaranteed the corporate debt. "A guarantee is an undertaking or promise on the part of the guarantor which is collateral to a primary or principal obligation and binds the guarantor to performance in the event of non-performance of the principal obligor." *Industrial Inv. Corp. v. Rocca,* 100 Idaho 228, 232, 596 P.2d 100, 104 (1979). *See Commercial Credit Corp. v. Chisholm Bros. Farm Equip. Co.,* 96 Idaho 194, 525 P.2d 976 (1974); *Durant v. Snyder,* 65 Idaho 678, 151 P.2d 776 (1944).

■ Here, however, the trial court specifically found that Pierson had never asked Jones to personally guarantee the corporate debt; that Pierson never asked for a second mortgage on defendant's building as security; that while there was a series of discussions about securing a loan, Jones had attempted but failed to raise money on his personally owned building to pay off Pierson; that Pierson, on three of the notes, loaned money at rates allowable only for a loan to a corporation, and that Pierson at all times knew he was dealing with a corporation. Those findings of fact are supported by substantial and competent, although conflicting, evidence and will not be disturbed on appeal. *Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979).

Appellant Pierson asserts that a letter written by Jones's attorney dated February, 1977, indicates that Jones was personally guaranteeing the corporate loans. That letter stated: "It is my further understanding that Mr. Jones will be given until May 1, 1977, to completely pay off all loans to Mr. Pierson." Jones, however, argues that such statement meant that he would attempt to borrow money on his personal property, which he would then loan to the corporation, so it could repay Pierson. The evidence indicates that Jones did so attempt to obtain a second mortgage, but failed to do so. In such situation where there is a conflict as to the meaning or inferences to be drawn from the evidence, it is the function of the trier of fact to make such determination. *Johnson v. Sweeney,* 91 Idaho 805,

430 P.2d 883 (1967). Here the trier of the fact made such determination in favor of Jones and it will not be disturbed on appeal.

■ Finally, Pierson asserts an equitable lien should be imposed upon Jones's real property. The trial court disagreed, as does this Court. Here there was no equitable lien by agreement since such presupposes a creditor-debtor relationship between the parties and here no such relationship existed between Jones as an individual and Pierson. Further, there is no showing of unjust enrichment, which would justify a judicially imposed equitable lien. *See* D. Dobbs, Handbook on the Law of Remedies: Damages-Equity-Restitution § 4.3 (1973).

The judgment of the trial court is affirmed. Costs to respondent. No attorney fees on appeal allowed.

BAKES, C. J., and McFADDEN and DONALDSON, JJ., concur.

BISTLINE, Justice, dissenting.

Appellant Pierson lists four issues on this appeal, of which I discuss only the second, believing it well taken. With no other member of the Court appearing to consider my view, it would serve no purpose to write upon the other issues.

The second issue raised by Pierson is "[w]hether Master Sheet Metal was the alter ego of Gail Jones so that Mr. Pierson may hold him individually liable for Master Sheet Metal's debts?" Pierson's complaint contained the following:

"12. At all times relevant hereto, Master Sheet Metal, Inc., was the alter ego of defendant and defendant used said corporation for the sole purpose of transacting his individual business under a corporate guise. Said corporation does not have any genuine or separate corporate existence, there being such a unity of interest and ownership between defendant and Master Sheet Metal, Inc., that the separate personalities of the corporation and defendant do not exist. This allegation that Master Sheet Metal, Inc., is the alter ego of defendant is supported by the following facts, among others:

"(a) The corporation is inadequately capitalized.

"(b) Defendant has treated the assets of the corporation as his own.

"(c) Defendant has given plaintiff assurance that the amounts owing to plaintiff would be paid out of defendant's individual property.

"(d) Defendant has conducted business without regard to corporate procedures and formalities.

"(e) Defendant is the sole stockholder, director, and officer of Master Sheet Metal, Inc., and said corporation is in effect a 'one-man show'."

Appellant in his brief points out by detailed references to the transcript that these allegations were supported at the trial. The only statement by the trial court on this issue was "[t]he facts disclosed by the evidence do not, as a matter of law, justify piercing the corporate veil." This conclusion is upheld by the Court on appeal by the equally *conclusory* statement that "[w]e find ample, substantial and competent evidence to support those findings upon which the trial court based its conclusion." It is a case of an appellate conclusion upholding a trial court conclusion. *The trial court never made any factual findings on the question of whether Jones treated the corporation as his alter ego.*[1]

It is a well settled principle of this Court that a court sitting without a jury must make findings of fact and conclusions of law on the issues before it. *Morris v. Frandsen*, 101 Idaho 778, 621 P.2d 394 (1980); *Stecklein v. Montgomery*, 98 Idaho 671, 570 P.2d 1359 (1977); I.R.C.P. 52(a). Here the trial court made no findings of fact on this issue, and appellant's brief elaborately points out that such a question of fact did exist. It is not the role of this Court, or any member thereof, however, to review the record and make independent findings of fact. That is a matter for the trial court. This Court is not in a position to review the trial court's conclusion of law where there are no factual findings on which that conclusion was based.[2]

In *Stecklein v. Montgomery, supra,* this Court reversed for a new trial where there were no specific findings of fact on issues raised, in spite of the fact that in that case the issue of a lack of findings was not raised on appeal. No less is required in this case, although I submit that the better procedure is as I outlined in *Stecklein v. Montgomery, supra* at 675, 570 P.2d at 1363 (Bistline, J., dissenting).

---

1. The only findings which could possibly be said to bear on this issue are that "the accounting procedures were in accord with accepted accounting practices for small corporations" and that the legal work was done by a qualified attorney. These findings do not address the allegations that Jones used the corporation as his alter ego.

As to the issue of undercapitalization, the issue is not whether the corporation was initially undercapitalized, but whether Jones drained the corporate assets for his own use. Although perhaps not properly phrased by Pierson, the intent of his argument is obvious. The court made no finding on this issue.

2. Pierson moved to amend the findings to include such findings, but the court denied the motion.