643 P.2d 1085

**Petro G. ELIOPULOS and Janet G. Eliopulos, husband and wife, and Celia Eliopulos, a widow, Plaintiffs, Respondents, and Cross-Appellants,**

**v.**

**KONDO FARMS, INC., an Idaho corporation; Henry T. Kondo and Alice S. Kondo, husband and wife; Oscar Kondo and Jane Doe Kondo, husband and wife, and Kondo Brothers, a partnership, Defendants, Appellants, and Cross-Respondents.**

No. 13655.

Court of Appeals of Idaho.

April 6, 1982.

William F. Gigray, Jr., Gigray, Miller, Downen & Weston, Caldwell, for defendants, appellants, and cross-respondents.

Andrew M. Harrington, Anderson, Kaufman, Anderson & Ringert, Boise, for plaintiffs, respondents, and cross-appellants.

BURNETT, Judge.

Petro Eliopulos and his family sued for damage to crops on their farm caused by waste water flowing from land owned by Kondo Farms, Inc. Eliopulos also sought punitive damages, recovery of costs incurred in mitigating the crop damage, and

injunctive relief from further flooding. Kondo answered by claiming an irrevocable license or a prescriptive easement to drain waste water across the Eliopulos property.

The trial court awarded Eliopulos damages for crop loss, and issued an injunction; but the court denied the claims for punitive damages and recovery of costs incurred in mitigating damages. Both sides have appealed. We affirm the award of damages for crop loss, the denial of punitive damages and the issuance of an injunction. However, we vacate the denial of recovery for costs of mitigating damages, and we remand for further proceedings on that issue. Our discussion focuses upon three main areas of controversy: (1) Kondo's assertion of irrevocable license or prescriptive easement, (2) Eliopulos' claim of compensatory damages, and (3) Eliopulos' claim of punitive damages.

The record takes us back to the year 1962. At that time an entity known as Basin Land Company purchased certain farm ground now held by the parties. Kondo subsequently leased a portion of Basin's ground. From 1964 to 1968, irrigation waste water from the leased premises, as well as from other land owned by Kondo and Basin, collected on the portion of Basin's property which was ultimately sold to Eliopulos. In 1968, by oral agreement, Basin and Kondo collaborated to dig a small trench for the waste water. Kondo contributed $500 and labor to the project. The trench ran across the land later sold to Eliopulos.

The Eliopulos family acquired the subject ground in 1974. Petro Eliopulos testified at trial that he walked the property before he purchased it, and saw no trench. In 1974, waste water from Kondo's ground flowed across the Eliopulos land and damaged the crops. Eliopulos caused a new trench to be dug on the subject property by a tenant. Eliopulos also demanded an end to the flooding. In 1976, the new trench interfered with Eliopulos' irrigation system, resulting in crop loss. At the end of the 1976 growing season, Eliopulos filled in the trench. In 1977 and 1978, Kondo's waste water flooded other portions of the Eliopulos land, and caused further crop damage.

## I

Kondo contends that its oral agreement in 1968 with Basin established a perpetual right to drain waste water across the Eliopulos land. Henry Kondo so testified on behalf of Kondo Farms, Inc. However, Basin's president testified by deposition that he intended to convey no permanent right to Kondo, and that the agreement was on a year-by-year basis. Upon this conflicting evidence, and its investment of $500 and labor, Kondo has urged recognition of a perpetual license to drain its waste water across the Eliopulos land.

Although the term "irrevocable license" may seem contradictory, it found a place in Idaho law nearly seven decades ago. Our Supreme Court, in *McReynolds v. Harrigfeld*, 26 Idaho 26, 140 P. 1096 (1914), held that a license not reduced to writing would be deemed revocable, but could become irrevocable either (a) by estoppel, where the licensor allows the licensee to incur considerable expense in the belief that the license would be perpetual, or (b) by oral agreement between the licensor and licensee, coupled with consideration to support a perpetual license. 26 Idaho at 31–34, 140 P. at 1097–98.

Kondo has presented no evidence that it incurred any expense other than the consideration given for the agreement with Basin. The estoppel test under *McReynolds* would not apply. We turn to the second *McReynolds* test, an oral agreement coupled with consideration. The trial court found that there had been such an agreement, with consideration. However, the court ruled that the license granted to Kondo by Basin was intended to be revocable, and would not be made perpetual. Kondo attacks this ruling as unsupported by the evidence and inconsistent with *McReynolds*. In our view, the basic difficulty is with the *McReynolds* decision itself. In this case *McReynolds* required the trial court to surmise the intent of an oral agreement made in 1968. We believe the time has come to re-examine *McReynolds*.

The *McReynolds* opinion was heavily influenced by analogous cases in other states, and it quoted extensively from decisions in Oregon. However, our research has not disclosed another reported decision in Idaho relying upon the oral agreement theory advanced in *McReynolds*. To the contrary, *McReynolds* has been cited for the familiar proposition that a written instrument is required to transfer an interest in real property. *E.g., Schultz v. Atkins*, 97 Idaho 770, 773, 554 P.2d 948, 951 (1976); *Fajen v. Powlus*, 96 Idaho 625, 628, 533 P.2d 746, 749 (1975). *McReynolds* has also been cited for the principle that oral licenses are revocable. *MacKinnon v. Black Pine Mining Co.*, 32 Idaho 228, 231, 179 P. 951, 951 (1919). The estoppel theory in *McReynolds* continues to be recognized, but has not formed the substantive basis of decision in any later cases. *See West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973); *Harsin v. Pioneer Irrigation Dist.*, 45 Idaho 369, 376, 263 P. 988, 990 (1927).

In contrast to *McReynolds*, the RESTATEMENT OF PROPERTY (1944) makes no provision for an "irrevocable license" created by oral agreement or by estoppel. However, at section 519(4), the Restatement sets forth a rule for extended duration of a revocable license:

> A licensee under ... a license ... who has made expenditures of capital or labor in the exercise of his license in reasonable reliance upon representations by the licensor as to the duration of the license, is privileged to continue the use permitted by the license *to the extent reasonably necessary to realize upon his expenditures.* [Emphasis supplied.]

The Restatement rule, that duration of a revocable license—if not otherwise fixed— should be commensurate with the investment in it, impresses us as better reasoned than the notion of a license made irrevocable by estoppel or by oral agreement. It is also a more practical rule. It relieves a trial court of guessing at the parties' intent. It avoids the extremes of either refusing to recognize an oral license, or recognizing it forever. Moreover, the Restatement rule makes it unnecessary to grapple with the elusive conceptual question of when an expenditure or payment of consideration would be sufficient, under *McReynolds*, to support a license that lasts forever. It substitutes the more practical question of how long the license must run for the benefits to be commensurate with the costs.

The Restatement rule has been cited with approval in Oregon. *Rouse v. Roy L. Houck Sons' Corp.*, 249 Or. 655, 439 P.2d 856 (1968). Early authority in that state, upon which *McReynolds* relied, now appears to be narrowly interpreted. *Brusco Towboat Co. v. State*, 30 Or.App. 509, 567 P.2d 1037, 1048 (1977), *modified on other grounds,* 284 Or. 627, 589 P.2d 712 (1978).

We adopt the rule of Restatement section 519(4). To the extent that the language of this section is inconsistent with *McReynolds*, we overrule *McReynolds*.

■ Applying the Restatement rule to this case, we hold that Kondo's investment of $500 and labor has been sufficiently realized by six full years of draining waste water across the Eliopulos property, from 1968 to 1974. The trial court's ruling, that Kondo had only a revocable license, must be sustained if it reached the right result, although on a different theory. *Archer v. Mountain Fuel Supply Co.*, 102 Idaho 852, 853, 642 P.2d 943, 944 n.1 (1982); *Southern Idaho Realty of Twin Falls, Inc. v. Hellhake and Associates, Inc.*, 102 Idaho 613, 636 P.2d 168 (1981). We conclude that the oral license was revocable, and that it was terminated in 1974 when Eliopulos demanded that the flooding be stopped.

■ Kondo next urges that it has a prescriptive easement to drain waste water across the Eliopulos land. The trial court held to the contrary. Drainage of waste water across the subject property occurred in three distinct time spans: from 1964 to 1968, when apparently there was no agreement between Kondo and Basin; from 1968 to 1974, when the oral license from Basin was in force; and from 1974 until Eliopulos filed this lawsuit in 1977. These time spans do not embrace any period of five succes-

sive years of hostile or adverse use. Kondo's claim of right was interrupted by six years of permissive use under the oral license. Accordingly, we sustain the trial court's holding that Kondo had not acquired a prescriptive easement. *See, e.g., Webster v. Magleby*, 98 Idaho 326, 563 P.2d 50 (1977).

## II

■ Kondo argues that, even if it was not entitled to drain its waste water across the Eliopulos property, the trial court's award of damages for crop loss was unsupported by the evidence. Damages must be proven with reasonable certainty. The existence and extent of damages cannot be left to speculation. *Anderson & Nafziger v. G. T. Newcomb, Inc.*, 100 Idaho 175, 595 P.2d 709 (1979); *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 415 P.2d 48 (1966). The measure of damages for crop loss is the difference between the value of crops actually raised, and the value of crops that would have been raised under normal conditions. *Casey v. Nampa & Meridian Irrigation Dist.*, 85 Idaho 299, 379 P.2d 409 (1963).

■ Petro Eliopulos testified extensively at trial regarding the crop value actually realized and the value that would have been realized had there been no waste water damage. This testimony was not controverted. Rather, Kondo has questioned the credibility of the witness and the sufficiency of the evidence. The credibility of a witness, and the inferences to be drawn from the evidence, are determinations to be made by the trial court. I.R.C.P. 52(a); *Johnson v. Sweeney*, 91 Idaho 805, 430 P.2d 883 (1967). In this case the trial court accepted Eliopulos' testimony. His testimony was consistent with the standard for proof of damages articulated in *Casey*. We hold that the testimony was sufficient to take damages out of the realm of speculation. The trial court's findings on the issue of crop damage were supported by substantial and competent evidence. They will not be disturbed. I.R.C.P. 52(a); *Cougar Bay Co., Inc. v. Bristol*, 100 Idaho 380, 597 P.2d 1070 (1979).

■ Kondo further argues that Eliopulos had a duty to mitigate his damages, and that the steps he took to minimize his crop loss were inadequate. Our Supreme Court held in *Casey* that an aggrieved party has an obligation to take reasonable steps to minimize damages suffered by breach of contract or by tort. 85 Idaho at 305, 379 P.2d at 412; *see also Christensen v. Gorton*, 36 Idaho 436, 211 P. 446 (1922). Eliopulos has urged us to hold that there is no duty to mitigate damages in cases involving intentional torts. We deem it unnecessary to reach that far. The instant case can be decided on the facts. The Supreme Court in *Casey* stated that the reasonableness of the method selected to minimize damages is an issue properly to be considered by the jury. 85 Idaho at 305, 379 P.2d at 412. It is an issue of fact.

■ Eliopulos caused a new trench to be dug on his property, but later filled it. As the party causing the damage, Kondo bore the burden of proving that damage reasonably could have been further mitigated. *Clark v. International Harvester Co.*, 99 Idaho 326, 347, 581 P.2d 784, 805 (1976); *see also* D. Dobbs, Remedies § 3.7 at 189 (1973). The trial court found that Kondo had not carried this burden. Upon our review of the record, we conclude that this finding is supported by substantial and competent evidence. It will be sustained. I.R.C.P. § 52(a).

■ In the cross-appeal, Eliopulos urges that the trial court erred in not allowing recovery of certain costs incurred in the effort to minimize crop damages. The trial court ruled that this claim

> [has] not been established with sufficient clarity to enable the Court to determine such damages with reasonable certainty, not as to the amount of such claims, but rather as to the right to recover such damages.

To the extent that this ruling implies that liability, as opposed to damages, must be established with reasonable certainty, it is not correct. *Owen v. Burcham*, 100 Idaho 441, 447, 599 P.2d 1012, 1018 (1979); *Curtis v. Dewey*, 93 Idaho 847, 475 P.2d 808 (1970).

Moreover, in *Casey* our Supreme Court held that a party could recover the costs reasonably incurred in minimizing damages or in avoiding the consequences of wrongful conduct by the other party. 85 Idaho at 305, 379 P. at 412; *see also* 22 Am.Jur.2d *Damages* §§ 32, 69 (1965). Accordingly, we vacate that portion of the trial court's judgment denying recovery of expenses incurred in mitigating damages, and remand to the district court for further consideration in light of *Casey*.

### III

Eliopulos contends that the trial court erred in refusing to assess punitive damages against Kondo. The trial court found that Kondo did not drain waste water across the Eliopulos property in bad faith, but did so under a mistaken belief that it had an irrevocable license or a prescriptive easement.

Our Supreme Court recently has held that punitive damages in Idaho are reserved for the most unusual and compelling circumstances. Such damages are appropriate only where the injury results from an act that is an extreme deviation from reasonable standards of conduct, performed with an understanding of or disregard for its likely consequences. *Hatfield v. Max Rouse & Sons, N. W.*, 100 Idaho 840, 606 P.2d 944 (1980); *Linscott v. Rainier Nat'l Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980). We hold that the trial court's findings of good faith and mistaken belief by Kondo preclude the imposition of punitive damages under the standards of *Hatfield* and *Linscott*. The findings are supported by substantial and competent evidence, and they will not be set aside. I.R.C.P. 52(a).

The judgment of the district court, except as to Eliopulos' claim for expense of mitigating damages, is affirmed. The cause is remanded for further proceedings on the expense issue, consistent with this opinion. Costs to respondents, cross-appellants. No attorney fees on appeal.

WALTERS, C. J., and SWANSTROM, J., concur.