586 P.2d 1062

**Don C. SMITH, Plaintiff-Appellant,**

v.

**CITY OF PRESTON, a municipal corporation, Defendant-Respondent.**

No. 12295.

Supreme Court of Idaho.

Nov. 21, 1978.

Vern E. Herzog, Jr., and Bruce S. Bistline of Herzog & Isley, Pocatello, for plaintiff-appellant.

W. Marcus W. Nye, Racine, Huntley & Olson, Pocatello, for defendant-respondent.

BAKES, Justice.

Plaintiff appellant Smith was injured and his automobile damaged in an accident in Preston, Idaho. Smith sued defendant respondent City of Preston claiming that the city's failure to properly maintain a stop sign was the cause of the accident. Smith appeals from a summary judgment in favor of the city, arguing that the district court erred (1) in allowing the city to amend its answer, and (2) in concluding that Smith had failed to comply with the notice requirements of the Idaho Tort Claims Act. I.C. §§ 6–901 to –928.

I

The accident occurred on September 27, 1973. In a letter dated October 8, 1973, a representative of Smith's collision insurance carrier informed the city that Smith had been involved in an automobile accident, that a stop sign obscured by tree branches was the cause of the accident, and that the city would be presented with a subrogation claim as soon as the total damages were determined. In a letter dated December 21, 1973, the city's insurance carrier denied the claim.

On February 11, 1974, Smith filed a complaint alleging that the city's negligence was the proximate cause of the accident and seeking damages for personal injuries and damage to the automobile. With apparent reference to the letter of October 8, written on behalf of Smith's insurance carrier, paragraph III of the complaint alleged: "That notice of claim has been presented to the clerk of the City of Preston within 120 days from the date of the accident, to wit: On October 8, 1973."

In January of 1975 the district court granted summary judgment in favor of the city for reasons not involved in this appeal. Smith appealed to this Court from that judgment. In October of 1975 this Court reversed and remanded the case. *Smith v. City of Preston*, 97 Idaho 295, 543 P.2d 848 (1975). While the case was pending on the first appeal, this Court released its decisions in *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975), *appeal dismissed sub nom. Agost v. Idaho*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975), and *Independent School District v. Callister*, 97 Idaho 59, 539 P.2d 987 (1975), which upheld the notice requirements of the Idaho Tort Claims Act.

Following the remittitur to the district court, the city filed a second motion for summary judgment on the ground that Smith had not complied with the notice

requirements of the Idaho Tort Claims Act and that this Court's decisions in *Newlan* and *Callister* required strict compliance with those notice requirements. The city later sought leave to amend its answer to include as an affirmative defense an allegation that Smith had failed to comply with the notice requirements. The district court permitted the amendment and subsequently granted the city's motion for summary judgment. Smith brings this appeal contesting the order permitting the city to amend its answer and the order granting summary judgment to the city. We consider those issues in that order.

## II

■ Smith argues that the city's original answer was not sufficient to put in issue Smith's compliance with the notice requirements and that the district court erred in granting the city leave to amend its answer. Regardless of whether the original answer was adequate to raise the notice issue, we conclude that the district court did not err in granting the city leave to amend. Liberality is to be used in granting leave to amend and this matter is entrusted to the sound discretion of the trial court. *See Markstaller v. Markstaller,* 80 Idaho 129, 326 P.2d 994 (1958); 6 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1484 (1971). Our decisions in *Newlan* and *Callister* were released while the instant case was pending on appeal. The holdings of those cases could suggest to defense counsel that there was a genuine issue whether this plaintiff had complied with the notice requirements where counsel could have reasonably concluded under the prior case law that there was no such issue. The city sought leave to amend its answer at the first opportunity following the remittitur in order to raise this issue. The record indicates that the trial judge carefully considered the justice and fairness of allowing the city to amend its answer. Under these circumstances we cannot say that the district court abused its discretion in granting the city leave to amend. *See Emich Motors Corp. v. General Motors Corp.,* 229 F.2d 714 (7th Cir. 1956).

## III

■ The Idaho Tort Claims Act requires claims against a political subdivision, such as the city, to be filed with the clerk of the public entity within 120 days from the date the claim arose or reasonably should have been discovered. I.C. § 6–906. We have ruled that compliance with the Act's notice requirements is a condition precedent to bringing a suit under that Act. *Newlan v. State, supra.* Smith argues that the district court erred in concluding that the letter of October 8, written on behalf of his insurance carrier, was not an adequate notice of claim under the Act. In our view this assignment of error raises two distinct issues: (1) did the contents of the letter satisfy the Act's requirements for the contents of a claim against a governmental entity; and (2) was Smith entitled to rely upon that letter as notice of his claim?

With respect to the first question—the contents of a claim—the Act provides:

"6–907. CONTENTS OF CLAIMS— FILING BY AGENCY OR ATTORNEY—EFFECT OF INACCURACIES.— All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, *together* with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six (6) months immediately prior to the time the claim arose. . . . A claim filed under the provisions of this section shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the government entity was in fact misled to its injury thereby."

The letter of October 8, which was sent well within the 120 day period, stated:

"This letter is to advise that we represent the collision insurance carrier of Don C. Smith of Blackfoot, Idaho.

"Mr. Don C. Smith was involved in an automobile accident on 9–27–73 at approximately 7:30 PM at the intersection of 2nd South and First East in Preston, Idaho. This accident also involved Mr. Ralph Glen Stowell of 254 South First West, Logan, Utah.

"Our investigation reveals that the proximate cause of the accident was because of the stop sign located on the southwest corner of the intersection was obscured by branches from a tree. We are hereby placing the City of Preston on notice of a subrogation claim which will be presented as soon as we have the total damages completed.

"If you do have a liability carrier, we recommend that you turn this letter over to your company for investigation."

The city's insurance carrier replied with the following letter:

"Thank you for your letter concerning the above captioned accident. Having thoroughly investigated this accident to include talking to Mr. Bert Gailey, the investigating officer, I find that no portion of the blame for this accident can be placed on the City of Preston.

"The tree in question is neither owned or maintained by the City of Preston. According to the investigating officer, he explored the possibility that the owner of the tree might have caused some visibility problems with respect to the stop sign. By his measurements he found that the stop sign was completely visible for a period of 69 feet upon approaching the stop sign.

"Immediately following the accident, Mr. Smith, one of the operators involved, said, in effect, 'officer was there a stop sign there?', and upon the affirmative answer from the investigating officer then replied, in effect, 'then I sure went through it because I didn't see it.'

"Please consider this letter as a denial on your subrogated request."

Although the contents of the letter of October 8 does not comply with all the requirements enumerated in § 6–907, we believe the contents of the letter were adequate in light of the final proviso of that section which states that "[a] claim . . shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby." I.C. § 6–907. At the time summary judgment was entered, there was nothing in the record to suggest that the city was "misled to its injury" by any deficiencies in the contents of the letter. On the contrary, the reply by the city's insurance carrier indicates that the October 8 letter was sufficient to notify the city that a claim against it was being pursued and to apprise the city of sufficient facts for it to investigate the matter, determine its merits and prepare a defense. *See Newlan v. State, supra.*

Because the letter of October 8 adequately informed the city of a claim against it, the notice issue raised here is very different from that raised in *Newlan* and *Callister.* Those cases involved situations in which the governmental entity had learned, through its own investigation or otherwise, of the occurrence of the accident and injury during the 120 day period; the governmental entity had "substantial actual notice" of the injury. However, in those cases the governmental entity had not been presented with formal notice that the injured party intended to pursue a claim against it. In *Newlan* and *Callister* we ruled that compliance with the notice requirements of the Tort Claims Act was a condition precedent to bringing a suit against a governmental entity and that the government's actual notice of the injury did not obviate the need to satisfy those notice requirements. Mere knowledge of the injury does not necessarily put the governmental entity on notice that a claim against it is being prosecuted and thus apprise it of the need to preserve evidence and perhaps prepare a defense. In contrast to those cases, the letter in this case certainly put the city on notice that a

claim against it was being pursued. Thus, the city not only knew of Smith's accident but knew also that a claim against it based on that accident would be prosecuted. This case does not involve the situation where the governmental entity had "actual notice of the injury" but no notice of the claim. Here the city had notice of both the accident and the claim.

We turn now to the second question—whether Smith was entitled to rely upon the letter written on behalf of his insurance carrier as notice of his claim. The answer to this question lies in an understanding of the nature of the claim of the insurance carrier. The letter indicates that the carrier was asserting a "subrogation claim." The nature of a subrogee's claim has been summarized as follows:

"Since subrogation is predicated upon the theory that the insurer becomes entitled and succeeds to the right of the insured, it necessarily follows that the insured must have a right against a third person in order to give rise to any right of the insurer against such third person by way of subrogation. . . .

"Otherwise stated, subrogation by definition and of necessity presupposes the existence of a right of the insured against some third person or fund which, by virtue of subrogation may thereafter be asserted by the insurer.

"Therefore, under the doctrine of subrogation the right of an insurer to sue is dependent upon the right of the party to whom it is subrogated, and subrogation cannot arise unless the insurer proves a valid claim against the wrongdoer. In other words, a judgment must be supported by competent evidence that the third party was a tortfeasor and that its negligent act was the proximate cause of the accident which caused damage to the insured's automobile." 16 G. Couch, Couch Encyclopedia of Insurance Law, § 61:111 (2d ed. by R. Anderson 1966). "The identity of a cause of action is not changed by the subrogation of an insurer thereto. Thus, the subrogation results only in a change in the beneficial owner-

ship of the cause and has no effect on the character or underlying basis of the cause of action.

"The right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. In other words, the concept of subrogation merely gives the insurer the right to prosecute the cause of action which the insured possessed against anyone legally responsible for the latter's harm." *Id.*, § 61:37.

■ The insurer's subrogation claim is derived from and dependent upon successful prosecution of the insured's claim. Notice by Smith's insurance carrier of a subrogation claim was therefore necessarily also notice of Smith's claim upon which the subrogation request was founded. We therefore conclude that the notice was not rendered invalid or insufficient simply because it was made by Smith's subrogee rather than Smith himself. In our view a contrary ruling would result in an unreasonably narrow and over-technical construction of the last sentence of I.C. § 6–907 and would be inconsistent with the basic intent and purpose of the statute, which is the primary rule of statutory construction. *Messenger v. Burns*, 86 Idaho 26, 382 P.2d 913 (1963).

The city cites three California Court of Appeals decisions, *Petersen v. City of Vallejo*, 259 Cal.App.2d 757, 66 Cal.Rptr. 776 (1968); *Bozaich v. State*, 32 Cal.App.3d 688, 108 Cal.Rptr. 392 (1973); *Roberts v. State*, 39 Cal.App.3d 844, 114 Cal.Rptr. 518 (1974), which it argues stand for a contrary result. In our view, these cases are properly distinguished.

*Petersen* involved a wrongful death claim against the state. The surviving spouse had complied with the notice requirements of the applicable California statutes, but a surviving daughter had not. In ruling that the daughter was not entitled to rely upon the spouse's compliance with the notice provisions the court specifically noted that under California law no heir could recover unless the heir suffered a loss and that each heir was regarded as having a personal and separate cause of action. 66 Cal.Rptr. at

781–82. The daughter's claim was not derivative from the spouse's claim. Thus, unlike the subrogation claim involved here, the spouse's claim in *Petersen* was not necessarily notice to the state of the daughter's separate claim, which depended upon proof of her own loss.

*Bozaich* involved an attempted class action, which the court viewed as an inverse condemnation action, by forty individuals against the State of California. Two of the individuals had filed timely claims against the state, as required by statute, but the rest had not. In denying the class action, the court ruled that the plaintiffs had failed to satisfy the requirements for a class proceeding and ruled also that to allow the plaintiffs' class action would violate the notice requirements of the California statute. The court in *Bozaich* was concerned with the circumvention of the notice requirements through a class action, a problem not presented here. Moreover, the claims in *Bozaich*, though perhaps similar, were nevertheless separate and not derivative or dependent upon each other. Notice of one was not notice of the others.

*Roberts* involved a wrongful death claim against the state by a surviving spouse and her minor children. The spouse failed to file a notice of claim within the statutory period, but the decedent's employer and its workmen's compensation carrier did file a timely claim. Concluding that the filing by the employer and the workmen's compensation carrier did not relieve the spouse of her obligation to file a claim, the court stated:

> "If we accept her analysis of the purposes of the statutes involved, it does not follow that the filing of a claim by an insurance carrier and an employer would 'satisfy' such purposes as to Mrs. Roberts, as she would have us hold. The fact that the State has been put on notice that a workmen's compensation carrier and an employer may sue it alerts the State to possible liability under the Labor Code. But that exposure is different in kind and nature from exposure to a wrongful death action by a wife with all the attendant possibilities of complex litigation

and the possibility of extremely high damages if liability is established. The contention overlooks the fact that one of the purposes of the claims statute is to provide opportunity for orderly fiscal planning by advance knowledge of potential claims and to provide opportunity for the entity to rectify promptly a condition that resulted in injury and so prevent further losses." 114 Cal.Rptr. at 521.

The situation in *Roberts* is somewhat analogous to the situation in the instant case. Although the subrogation claim in this case necessarily provided the city with notice of Smith's claim, the extent of the subrogation claim was limited to the amount the insurance company was compelled to pay under the policy. 16 Couch, *supra*, § 61:39. Also, the city may have believed the letter only constituted a claim for Smith's property damage and not a claim for his entire loss, including personal injuries. However, our statute specifically addresses the situation in which the notice, though given, does not reveal the full nature of the claim. I.C. § 6–907 provides in pertinent part:

> "A claim filed under the provisions of this section shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby."

The failure of the notice of subrogation claim to inform the city of the full extent of Smith's claim renders the notice insufficient only if the city can establish that it was thereby misled to its injury. As we stated earlier, no such showing was made at the time summary judgment was granted.

■ The city also argues that since I.C. § 6–907 specifically permits someone to file a claim on behalf of the claimant if the claimant is a minor, incapacitated or a nonresident and absent from the state, the claim in all other cases must be filed personally by the claimant. The pertinent portion of § 6–907 states:

> "If the claimant is incapacitated from presenting and filing his claim within the

**624**

time prescribed or if the claimant is a minor or if the claimant is a nonresident of the state and is absent during the time within which his claim is required to be filed, the claim may be presented and filed on behalf of the claimant by any relative, attorney or agent representing the claimant."

In *Larson v. Emmett Joint School Dist. No. 221*, 99 Idaho 120, 577 P.2d 1168 (1978), we recently rejected an analogous argument with respect to an incapacitated claimant, stating:

"Respondent argues that this language [I.C. § 6–907] should be interpreted to require that so long as the claimant was alert enough to deal with parties around her and so long as one of those parties ('any relative, attorney or agent') was educated enough to file on her behalf, such an alternative filing process is mandatory. . . . We disagree and are not inclined to so interpret the provisions of the Idaho Tort Claims Act, I.C. § 6–907, which merely provides another acceptable alternative method of compliance." 99 Idaho at 122–23, 577 P.2d at 1170–71.

We likewise reject the city's interpretation which would in effect require us to read into that language a negative pregnant that, except for those circumstances listed in the statute, personal submission of the claim by the claimant himself is the sole and exclusive method of compliance. *See Noble v. Glenns Ferry Bank, Ltd.*, 91 Idaho 364, 421 P.2d 444 (1966).

For these reasons we conclude that the district court erred in granting the defendant's motion for summary judgment. Reversed and remanded.

SHEPARD, C. J., and McFADDEN, DONALDSON and BISTLINE, JJ., concur.