647 P.2d 730

**Gary HUFF, Plaintiff-Respondent and Cross-Appellant,**

v.

**Chris Andrew UHL and Minidoka Irrigation District, Defendants-Appellants and Cross-Respondents.**

No. 13929.

Supreme Court of Idaho.

June 18, 1982.

Kathryn Anne Sticklen of Quane, Smith, Howard & Hull, Boise, *for defendants-appellants and cross-respondents.*

William K. Fletcher of Parsons, Smith, Stone & Fletcher, Burley, for plaintiff-respondent and cross-appellant.

BAKES, Chief Justice.

The appellants in this action contest a judgment against them for damages arising out of a vehicular collision. Defendant appellant Chris Uhl was driving a dump truck in the scope of his employment with defendant appellant Minidoka Irrigation District when he turned out from a private roadway in front of the plaintiff respondent Huff. Huff attempted to avoid an accident by veering left into the barrow pit; however, Uhl's dump truck crossed into the left hand lane and came into contact with plaintiff's vehicle while it was in the barrow pit. Uhl claimed his brakes had failed.

Huff unsuccessfully endeavored to have defendants pay for the damages, had his truck repaired, and then filed an action against the defendants in small claims court to recover the costs of repairing his truck. Judgment was entered in his favor for the sum of $688.07 plus costs of $17.50. Defendants appealed to the district court. The district court held a trial de novo and granted judgment in favor of Huff for $688.33, but limited the award of costs to $50, including the costs of filing in small claims court, and limited attorney fees to $25. Defendants have appealed the judgment, and plaintiff Huff cross appeals.

■ Appellants first argue that Huff failed to adequately comply with the notice provisions of the Idaho Tort Claims Act, Idaho Code title 6, chapter 9. The facts relevant to this issue were found by the district court to be as follows:

"About four days after the collision the plaintiff went to the M.I.D. business office. He was greeted by a receptionist. He gave his name, told the receptionist that he had been involved in an accident with one of M.I.D.'s trucks, and handed repair estimates (Exhibits 1 and 2) to the receptionist. The receptionist went over to Nelda Spevak, secretary treasurer of M.I.D. and had a discussion with her while holding in her hands the estimates.

The receptionist then went to the copy machine and made copies of the estimates, after which the receptionist returned plaintiff's estimates to plaintiff. About 3–4 weeks later the plaintiff again went to the M.I.D. office and talked with Spevak and the receptionist. Spevak advised the plaintiff that M.I.D.'s insurance carrier would take care of the matter, or that she was turning the matter over to their insurance company. Following that event the plaintiff telephoned M.I.D. at least twice, in course of which calls the plaintiff was given the name and telephone number of the M.I.D. insurance agency. A month or so after the collision the plaintiff telephoned the insurance agent to inquire about the collision settlement. At that time plaintiff explained to the insurance agent (who had received no information from M.I.D.) the facts of the collision and inquired if he should get the pickup repaired. At the request of the insurance agency plaintiff sent him his copies of the repair estimates because they had not received them from M.I.D. One Larry Stonely, presumably an insurance adjuster for the insurance carrier, came to plaintiff's place and looked over the pickup some two months after the collision; and within the 120 day time limit for notice under the Tort Claims Act, plaintiff advised Larry Stonely of plaintiff's claim...."

Although the evidence on some of the above findings is conflicting, there is substantial competent evidence to support them, and we will therefore not disturb those findings on appeal. E.g., Cougar Bay Co., Inc. v. Bristol, 100 Idaho 380, 597 P.2d 1070 (1979). The question thus presented to us is whether the above facts as found by the district court support the conclusion that respondent Huff's notice of claim was sufficient as measured by the requirements of the Tort Claims Act.

In particular, appellant challenges the sufficiency of Huff's notice based upon the following statutes:

"6–902. DEFINITIONS.—As used in this act:

. . . .

"7. 'Claim' means any *written demand* to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment." (Emphasis added.)

"6–906. FILING CLAIMS AGAINST POLITICAL SUBDIVISION OR EMPLOYEE—TIME.—All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be *presented to and filed with the clerk or secretary of the political subdivision* within one hundred twenty (120) days from the date the claim arose or reasonably should have been discovered, whichever is later." (Emphasis added.)

"6–907. CONTENTS OF CLAIMS—FILING BY AGENT OR ATTORNEY—EFFECT OF INACCURACIES.—All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six (6) months immediately prior to the time the claim arose. . . . A claim filed under the provisions of this section shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby."

First, it is argued that the written estimate of damages presented by Huff was not a "written *demand*" as required under I.C. § 6–902(7) because the writing itself did not contain a statement of demand upon M.I.D., and that the written estimate was also deficient as notice in that it did not contain all of the information required under I.C. § 6–907. In *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978), this Court, by reason of the following language in I.C. § 6–907, declined to take such a narrow view concerning the form that a notice of claim under the Tort Claims Act should take:

"A claim filed under the provisions of this section shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby."

In light of that provision in I.C. § 6–907, we pointed out in *Smith* that the primary function of notice under the Tort Claims Act was to "put the governmental entity on notice that a claim against it is being prosecuted," and that notice serving that function would not be insufficient unless the governmental entity was "misled to its injury." 98 Idaho at 621–22, 586 P.2d at 1066–67. The facts of this case show that although the written estimate itself did not contain a statement of demand, M.I.D. was clearly apprised of the fact that a claim was being prosecuted against it, and the amount thereof. Certainly, the activities of both Nelda Spevak of M.I.D. and M.I.D.'s insurance carrier subsequent to Huff's delivery of notice confirm that fact. As was the case in *Smith*, there is no evidence here that M.I.D. was misled to its injury by any deficiency in respondent's notice. Consequently, we conclude that Huff's notice of claim was sufficient under the Tort Claims Act.

Appellant also argues that Huff's notice was insufficient under I.C. § 6–906 because it was not presented to and filed with the secretary of the irrigation district. The district court found that the receptionist took delivery of the estimate, discussed the claim with the M.I.D. secretary, Nelda Spe-

vak, while holding the estimates in her hands, and also made copies of the estimates. It is difficult for us to see what more could be called for. Certainly, as long as the notice is delivered to the secretary's office, it is sufficient. Here, it was found that the claim was brought to the immediate and personal attention of the secretary. We see no merit in appellant's argument.

■ Appellants finally argue that the evidence is insufficient to support a finding of liability, and the amount of damages awarded. We have reviewed the evidence and again find that it is more than adequate to sustain the judgment. *E.g. Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979). We think a recent statement by our Court of Appeals is appropriate to this case.

> "In regard to the trial court's findings, [the appellants have] been unable to do more than dispute minor details and point to conflicts in the evidence. As noted above, when a trial court's findings are supported by substantial and competent evidence, the mere existence of other, conflicting evidence does not establish that the findings are clearly erroneous. "These principles are well known to Idaho practitioners. They mark the fundamental difference between a trial court and an appellate court. An appeal should do more than simply invite the appellate court to second guess the trial court on conflicting evidence. Absent a clear showing of error, we will not invade the trial court's domain." *T-Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 837, 642 P.2d 70, 74 (Idaho App.1982).

■ Respondent Huff has requested attorney fees on appeal. In view of both the lack of any significant legal question in this appeal, and the minimal value of the claim involved, we conclude that this appeal was frivolous and unreasonably pursued, and therefore award attorney fees to the respondent. I.C. § 12–121; *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979).

Respondent Huff argues on cross appeal that on the appeal to the district court from the small claims court he should have been allowed more than the $25 for attorney fees permitted under I.R.C.P. 81(q). He argues that the $25 award permitted pursuant to that rule is a mandatory minimum and that further attorney fees may be awarded under I.C. § 12–121 and I.R.C.P. 54(e)(1).

I.R.C.P. 81(q) merely restates the statutory provision for the award of attorney fees in small claims court found in I.C. § 1–2311. I.C. § 1–2311, enacted in 1969, allows the "prevailing party" on appeal of a small claims decision to the district court an award of $25 for attorney fees. In 1976, the legislature enacted I.C. § 12–121, which is a statute of general application governing the award of attorney fees to "prevailing parties" in civil actions. Before enactment of I.C. § 12–121, the effect of I.C. § 1–2311 was clearly both to authorize an award of attorney fees to the prevailing party in a small claims appeal, and to limit that award to $25. I.C. § 12–121, however, contains no monetary limitation upon an award of attorney fees to prevailing parties. If attorney fees were available in small claims court pursuant to I.C. § 12–121, such would render the limited authorization for awarding attorney fees under I.C. § 1–2311 nugatory.[1]

■ The question thus presented is whether the enactment of I.C. § 12–121 repealed the $25 limitation on the award of attorney fees to the prevailing party in small claims appeals under I.C. § 1–2311. In *John Hancock Mutual Life Ins. Co. v. Haworth,* 68 Idaho 185, 192, 191 P.2d 359, 363 (1948), we stated:

> "[I]t is a canon of statutory construction that a later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute,

1. The promulgation of I.R.C.P. 54(e)(1) has no bearing upon the particular question presented here. I.R.C.P. 54(e)(1) creates no substantive right to attorney fees, but merely establishes a framework for applying I.C. § 12–121.

unless such intention is clearly manifested or unavoidably implied."

We have found no manifestation on the part of the legislature that the attorney fees provision of I.C. § 1–2311 was to be repealed or affected by I.C. § 12–121. Neither do we see any basis that such a result is "unavoidably implied" by the actions of the legislature or the contents of those statutes. Consequently, we conclude that I.C. § 12–121's general award of attorney fees is inconsistent with the more specific provision of I.C. § 1–2311 in regard to awarding attorney fees to prevailing parties in an appeal from the small claims department, and that I.C. § 12–121 is therefore not applicable to the award of attorney fees on such appeals.

█ Respondent also asserts that the district court erred by including the $17.50 small claims filing fee as part of the award of $50 in costs allowed on appeal pursuant to I.R.C.P. 81(p). I.R.C.P. 81(p) provides in regard to small claims appeals that "costs *on appeal* shall be awarded in a sum not to exceed fifty dollars ($50) and shall be awarded to the prevailing party in the appeal." (Emphasis added.) The $17.50 fee for filing the small claims action, which the magistrate awarded in the small claims trial, was not a cost *on appeal*. Respondent Huff is therefore entitled to the additional $17.50 awarded by the magistrate. I.C. § 1–2304. The judgment is modified to add $17.50 costs to respondent Huff's award, I.C. § 1–205, and the judgment as thus modified is affirmed.

Costs and attorney fees on appeal to this Court are awarded to respondent.

McFADDEN, BISTLINE, DONALDSON and SHEPARD, JJ., concur.