777 P.2d 1196

**Faye STEVENS, Ruth Bradetich, and Veda Bradetich, individually and jointly, as natural daughters and heirs of Walter L. Roberts; and Faye Stevens, individually, as administrator of the Estate of Walter L. Roberts, Plaintiffs–Appellants,**

v.

**Tom FLEMING and Gloria Fleming, husband and wife, individually, jointly and dba Sport Shop, a sole proprietorship; and Mark Grimes and Jane Doe Grimes, husband and wife, individually and jointly, Defendants–Respondents.**

No. 16988.

Supreme Court of Idaho.

July 12, 1989.

Fred R. Palmer, Sandpoint, for plaintiffs-appellants.

Nelson, Rosholt, Robertson, Tolman & Tyler, Twin Falls, for defendants-respondents Fleming. Terry McDaniel, argued.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for defendants-respondents Grimes. Edward L. Benoit, argued.

HUNTLEY, Justice.

## I.

On August 22, 1984, Walter Roberts, age 78, perished in a fire which destroyed a two story building in downtown Buhl, Idaho owned by Tom and Gloria Fleming. The Flemings operated a bar, kitchen, restaurant, dance floor and card room downstairs and Roberts resided in an apartment upstairs. Following the fire, Roberts was found dead in a doorway leading from the apartment into the hallway. The autopsy and death certificates note that he died of smoke inhalation while attempting to escape. Fire fighters reached the upstairs but did not know the location of Roberts' apartment. Roberts was the only upstairs tenant. The firefighters had to retreat after searching three to four rooms because the heat became unbearable.

The trial court found that the cause of the fire was unknown. The fire started inside the building on the first floor in a back room and reached the second floor by burning through a plate on the bottom of a vertical shaft located in the service area for the bar and restaurant. The flame was

fueled by materials located inside the vertical shaft, by materials located in the bathrooms and storage area located behind the restaurant on the first floor and by air drawn through the open stairway leading from the first to second floors and attic.

There were no fire exits from the second floor. Roberts' apartment was located at the end of the upstairs hallway, requiring him to walk approximately eighty feet to reach a stairway leading to a downstairs exit. There were no doors at the top or bottom of the stairs leading to the second floor. The Flemings purchased the building in 1979. During their five years of ownership prior to the fire, no smoke alarms, fire alarms, warning signs or fire exits were installed anywhere in the building. The subject of the safety of the building for its occupants was never discussed between the Flemings and Mr. Roberts. Prior to the fire, the Flemings undertook extensive remodelling of the downstairs portion of the building without installing fire resistant materials and without removing flammable materials. In the mid-seventies, fire destroyed a business located on the first floor of the building. Although the Flemings were not yet owners at that time, they were aware of this fire.

A wrongful death complaint was filed by Mr. Roberts' daughters, his sole surviving heirs, against the Flemings. More than a year later, fire chief Mark Grimes and his wife were added as defendants.

All defendants filed motions for summary judgment. An order was entered granting Grimes summary judgment of dismissal. The district court later entered an order disallowing Grimes' motion for costs but awarding Grimes $2,809.27 in costs and attorney fees against plaintiffs and their attorney under the provisions of Rule 11(a)(1), I.R.C.P. Later the district court granted defendants Flemings' motion for summary judgment in all respects. Motions to alter or amend the Rule 11 sanctions and granting of costs were denied.

This is an appeal from the order granting summary judgment to Grimes, the award of sanctions to Grimes under Rule 11(a)(1) and the grant of summary judgment to Flemings.

## II.

Appellants argue that the trial court erred in granting summary judgment to Flemings on their claim of common law negligence. Motions for summary judgment are only to be granted when, after a review of the pleadings, depositions, admissions and affidavits, there remain no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. Sec. 56(c). In determining whether any issues of material fact exist the trial court and this Court, upon review, must liberally construe all of the facts contained in the pleadings, affidavits and admissions in the light most favorable to the nonmoving party. *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986). Further, the Court must draw all reasonable inferences from the record in favor of the nonmoving party. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923 (1982). If a motion for summary judgment is supported by a particularized affidavit, the opposing party may not rest on the mere allegation or denial of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. I.R.C.P. 56(e); *Verbillis v. Dependable Appliance Co.*, 107 Idaho 335, 689 P.2d 227 (1984).

As stated above, the trial court granted Flemings' motion for summary judgment regarding plaintiffs' wrongful death claim. Idaho law allows a wrongful death action to be brought if the decedent could have maintained an action had he lived. I.C. § 5–311; *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853. Roberts' daughters claim that the deceased could have maintained an action for negligence against the Flemings had he lived. Analysis of any claim of negligence begins by identification and definition of a duty owed by defendant to plaintiff. A landlord is required to exercise reasonable care to his tenants in light of all the circumstances. *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984). In adopting the reasonable care standard

for landlords in *Stearns, supra,* the Idaho Supreme Court noted by way of footnote that its holding was supported by a statutory version of the implied warranty of habitability, I.C. § 6–320. When applicable, specific statutory provisions such as the Uniform Fire Code may prove useful in delineating minimum standards which are binding upon every owner of a rented premises. Such onpoint code provisions provide a ready measure of the base standard of care and failure to meet such standard may be negligence *per se* if the statutes or ordinances were designed to prevent the type of harm which occurred.

■ In the present case, the provisions of the Uniform Fire Code were not operative as to the Flemings premises. The construction of their building predated the enactment of the code. The Uniform Fire Code applies to premises constructed before its effective date only under certain enumerated circumstances, such as where a fire marshall inspects a structure and gives notice to the landowner of specific hazards. None of those circumstances was present here. The nonapplicability of the Uniform Code was incorrectly imbued with inordinate significance by the trial judge. Upon concluding that the Uniform Fire Code was inapplicable, the trial court should have considered facts and inferences sufficient to give rise to a question of the Flemings' having breached a duty of reasonable care which they owed to Roberts under common law, without regard to specific legislative or municipal pronouncements. Instead, the trial court seems to have made a direct leap from its finding that the Uniform Fire Code did not apply to its conclusion that the Flemings were, as a matter of law, immune from a claim of negligence. This analysis is contrary to established principles of jurisprudence in tort; it also violates the policy underlying building code legislation.

The Uniform Fire Code is designed to improve building safety. Allowing the nonapplicability of the Code to equate to an immunity from tort claims would result in the elimination of many sanctions capable of motivating the exercise of due care by landowners in maintenance of their properties. An illustrative scenario were the trial court's decision to stand, would be the preclusion of legal redress against the owner of a tavern who leases upstairs rooms to a boarder and idly watches as flames in the tavern fireplace lick the ceiling before bringing about the death of the upstairs boarder. So long as no "expert" came onto the scene and interjected her professional opinion that the flames created a specific danger, the tavern owner would not be liable under the trial court's concept of due care.

The common law has developed a doctrine of reasonable care under individual circumstances which is, in part, designed to avoid such self-serving attempts at avoiding responsibility for one's acts and/or omissions. Juries focus on what the reasonable person of average skill, ability and intelligence would do in the particular situation examined. Individual inexperience is not a legitimate reason for a lower standard of conduct. Status as an expert will heighten expectations regarding the level of care. The burden is lodged squarely on the individual defendant to weigh the burdens associated with undertaking a particular precaution against the probability of loss occasioned by a dangerous condition multiplied by the gravity of that loss. *United States v. Carroll Towing,* 159 F.2d 169 (2d Cir.1947). It is the responsibility of the jury to evaluate the defendant's resolution of this equation in order to determine the presence or absence of negligence.

In contrast to the well established doctrine of individual responsibility discussed above, the trial court applied a novel approach to the standard of conduct which seems to consist of the notion that a landowner never acts negligently unless she first becomes privy to expert visitation and opinion and then renounces it acting in defiance to the guidance fortuitously rendered. The trial court stated as follows:

> However, Flemings were not required to comply with the fire code, and not being fire experts themselves, could only rely on the recommendations, or lack of rec-

ommendations, made by the fire chief or other qualified individuals.

For the reasons recited above, we hold that this is an inaccurate statement of the law of negligence, specifically as to the duty to exercise reasonable care.

■ Appellants proffered evidence which raises genuine issues as to the material fact of Flemings' failure to exercise due care. The trial court disregarded the affidavit of Don Howard, an expert in fire reconstruction, who investigated this fire on behalf of appellants. The trial court decided that "there is nothing in the affidavit which is relevant to determining whether the Flemings were negligent." This conclusion was premised on the trial court's belief that Howard "presuppose[d] that the building was covered by the Uniform Fire Code, which it was not." This Court does not agree that Howard's affidavit would only be relevant to the negligence claim were the building covered by the Code. As the review of Howard's findings which is provided below will indicate, his statements constitute sufficient evidence in the record to give rise to genuine questions of adequate care which a jury could ultimately resolve by finding the Flemings negligent. Howard concluded that the rapid spread of fire from the first to second floor was caused by:

1. Failure of Flemings to install fire resistant wall and ceiling coverings, fire doors and/or self-closing doors when remodelling the care and bar and failure to remove flammable materials contained in the basement and accumulated in the vertical shaft of the building;

2. The failure of Flemings to separate the bar and restaurant, after remodelling, from the upstairs apartment and their failure to install sealed transoms and a fire door leading from the first to second floor, all of which would have prevented the escape of heat, gases and flame from the first floor up the stairway and through the upstairs hallway, blocking Mr. Roberts' only avenue of escape;

3. Failure of Flemings to install smoke detectors or a smoke alarm which would probably have allowed Mr. Roberts to awake with sufficient time to escape down the hallway and out of the building notwithstanding the rapid spread of fire;

4. Failure of Flemings to install an upstairs fire escape.

Because we find that a review of the record raises genuine issues of material fact regarding whether the Flemings acted negligently in their capacity as decedent's landlords, we conclude that the trial court erred in granting the Flemings' motion for summary judgment. See I.R.C.P. § 56(c). Accordingly, grant of summary judgment on the claim of negligence against the Flemings is reversed and the case is remanded for further appropriate disposition of that cause of action.

III.

The granting of Buhl fire chief Grimes' motion for summary judgment is affirmed because of appellants' failure to comply with the notice requirements of Idaho Tort Claims Act.

Compliance with the Idaho Tort Claims Act's requirement of presentation and filing of notice with the political subdivision being sued within 180 days from the date the claim against it arose or reasonably should have been discovered, whichever is later, is prerequisite to maintaining a claim against such political subdivision. I.C. § 6–906, infra. Appellants original complaint was filed on May 28, 1985. Action was initiated against Grimes by amended complaint dated August 4, 1986.

■ The claims against the Grimes were properly dismissed, because plaintiffs had failed to file a claim against the City within the time period required by the Idaho Tort Claims Act, since Mr. Grimes could have only sustained liability as a public official of the City. See, I.C. §§ 6–906 and 6–908, infra. Thus, the claim against the Grimes failed for lack of jurisdiction. The cause of action against the Grimes is clearly a legal action which comes within the purview of

the Idaho Tort Claims Act, I.C. § 6–901 through 6–928. At all times relevant hereto, Mr. Grimes was an employee, acting on behalf of a governmental entity. *See,* I.C. § 6–902 (Supp.1988).

Appellants' counsel argues that a letter sent by G.A.B. Business Services on behalf of Ranger Insurance Company to the City Clerk of the City of Buhl on December 20, 1984, placed the City of Buhl on actual notice that a claim against it was being prosecuted by the children and heirs of Walter Roberts. The letter is reproduced below in its entirety:

> GAB Business Services
> 1245 Lynwood Mall
> P.O. Box 1034
> Twin Falls, Idaho 83301
> Telephone (208) 733–5012
> December 20, 1984
> Branch Office

City of Buhl

Buhl, Idaho 83316

Attention: City Clerk

We represent Ranger Insurance Company who is the liability insurance carrier for T & G Flemming dba the Sport Shop Cafe.

Children and Heirs of Walter L. Roberts have made claim against T & G Flemming dba the Sport Shop Cafe for damages, funeral expenses and wrongful death of Walter L. Roberts totaling $152,000.00 as a result of the fire on 8–22–84.

They are alleging safety defects and code violations. From the facts before us, it appears the City would be responsible and we are therefore placing you on notice of this pending claim.

Mr. and Mrs. Tom Flemming reside at Rt. 4, Buhl, Idaho at this time and have resided as such address for six months prior to the time the claim was made against them.

> GAB Business Services
> Glen E. Bradford
> General Adjuster

GB/Lj

Idaho Code § 6–906 (Supp.1988) provides:

**6–906. Filing Claims against political subdivision or employee—Time.—**All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

Idaho Code § 6–902(7) (Supp.1987) defines a claim as:

[A]ny written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment.

Idaho Code § 6–907 (1979) sets forth the requisite contents of claims filed with governmental agencies.

All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six (6) months immediately prior to the time the claim arose. If the claimant is incapacitated from presenting and filing his claim within the time prescribed or if the claimant is a minor or if the claimant is a nonresident of the state and is absent during the time within which his claim is required to be filed, the claim may be presented and filed on behalf of the claimant by any relative, attorney or agent representing the claimant. A claim filed under the provisions of this section shall not be held invalid or insuf-

ficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby.

Appellants cite *Huff v. Uhl*, 103 Idaho 274, 647 P.2d 730 (1982) and *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978), in support of their argument that the insurance letter gave the City of Buhl sufficient notice of the tort claim by the plaintiffs.

In *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978), a motorist sued the City of Preston alleging that an accident had been caused by the city's failure to properly maintain a stop sign. The district court granted summary judgment for the city reasoning that plaintiff had failed to comply with the notice requirements of the Tort Claims Act in two respects: (1) the contents of the letter did not satisfy the Act's requirements for a claim against a governmental entity; and (2) plaintiff was not entitled to rely upon the letter written on behalf of his insurance carrier as notice of *his* claim. This Court held that the district court was in error in both respects, reversed the order granting summary judgment and remanded the action for trial. We review the analysis recited therein relative to both arguments concerning notice under the Tort Claims Act. A representative of the plaintiff's collision insurance carrier sent the following letter to the city:

This letter is to advise that we represent the collision insurance carrier of Don C. Smith of Blackfoot, Idaho.

Mr. Don C. Smith was involved in an automobile accident on 9–27–73 at approximately 7:30 PM at the intersection of 2nd South and First East in Preston, Idaho. This accident also involved Mr. Ralph Glen Stowell of 254 South First West, Logan, Utah.

Our investigation reveals that the proximate cause of the accident was because of [sic] the stop sign located on the southwest corner of the intersection was obscured by branches from a tree. We are hereby placing the City of Preston on notice of a subrogation claim which will be presented as soon as we have the total damages completed.

If you do have a liability carrier, we recommend that you turn this letter over to your company for investigation.

The insurance carrier replied with a letter stating that they had investigated the accident and were denying the subrogation request. We concluded that:

Although the contents of the letter of October 8 does not comply with all the requirements enumerated in Sec. 6–907, we believe the contents of the letter were adequate in light of the final proviso of that section which states that "[a] claim ... shall not be held invalid or insufficient by reason of an inaccuracy in stating the time, place, nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby." I.C. Sec. 6–907. At the time summary judgment was entered, there was nothing in the record to suggest that the city was "misled to its injury" by any deficiencies in the contents of the letter. On the contrary, the reply by the city's insurance carrier indicates that the October 8 letter was sufficient to notify the city that a claim against it was being pursued and to apprise the city of sufficient facts for it to investigate the matter, determine its merits and prepare a defense. See *Newlan v. State*, [96 Idaho 711, 535 P.2d 1348 (1975)], *supra*.

Because the letter of October 8 adequately informed the city of a claim against it, the notice issue raised here is very different from that raised in *Newlan* and [*Independent School District v.*] *Callister* [97 Idaho 59, 539 P.2d 987 (1975)]. Those cases involved situations in which the governmental entity had learned, through its own investigation or otherwise, of the occurrence of the accident and injury during the 120 day period; the governmental entity had "substantial actual notice" of the injury. However, in those cases the governmental entity had not been presented with formal notice that the injured party intended to pursue a claim against it. In *Newlan* and *Callister* we ruled that compliance with the

notice requirements of the Tort Claims Act was a condition precedent to bringing a suit against a governmental entity and that the government's actual notice of the injury did not obviate the need to satisfy those notice requirements. Mere knowledge of the injury does not necessarily put the governmental entity on notice that a claim against it is being prosecuted and thus apprise it of the need to preserve evidence and perhaps prepare a defense. In contrast to those cases, *the letter in this case certainly put the city on notice that a claim against it was being pursued.* Thus, the city not only knew of Smith's accident but knew also that a claim against it based on that accident would be prosecuted. This case does not involve the situation where the governmental entity had "actual notice of the injury" but no notice of the claim. *Here the city had notice of both the accident and the claim.*

99 Idaho at 621–622, 586 P.2d at 1065–1066. (Emphasis added.)

After deciding that the letter satisfied the requirements for a "claim" under I.C. § 6–907, this Court addressed the question of whether Smith was entitled to rely upon the letter written on behalf of his insurance carrier as notice of his claim. The letter in question indicated that the carrier was asserting a "subrogation claim" and "subrogation by definition and of necessity presupposes the existence of a right of the insured against some third person or fund which, by virtue of subrogation may thereafter be asserted by the insurer." 99 Idaho at 622, 586 P.2d at 1066 quoting 16 G. Couch, Couch Encyclopedia of Insurance Law, § 61:111 (2d ed. by R. Anderson 1966).

The insurer's subrogation claim is derived from and dependent upon successful prosecution of the insured's claim. *Notice by Smith's insurance carrier of a subrogation claim was therefore necessarily also notice of Smith's claim upon which the subrogation request was founded.* We therefore conclude that the notice was not rendered invalid or insufficient simply because it was made by Smith's subrogee rather than Smith himself. In our view a contrary ruling would result in an unreasonably narrow and over-technical construction of the last sentence of I.C. § 6–907 and would be inconsistent with the basic intent and purpose of the statute, which is the primary rule of statutory construction. *Messenger v. Burns*, 86 Idaho 26, 382 P.2d 913 (1963).

99 Idaho at 622, 586 P.2d at 1066. (Emphasis added.)

*Huff v. Uhl*, 103 Idaho 274, 647 P.2d 730 (1982) involved an action for damages arising out of a vehicular collision. Huff obtained a judgment against Minidoka Irrigation District (M.I.D.) and its employee, Uhl, who turned in front of Huff causing damages to Huff's vehicle while driving a dump truck in the course of his employment. M.I.D. and Uhl appealed the judgment claiming, *inter alia,* that Huff had failed to comply with the notice provisions embodied in I.C. §§ 6–902 and 6–907 when he presented written estimates of the cost of necessary repairs to M.I.D.'s receptionist. M.I.D. and Uhl argued that notice was deficient because it did not amount to a "written demand" as required under I.C. § 6–902(7). This Court noted that the primary function of notice under the Tort Claims Act was to "put the governmental entity on notice that a claim against it is being prosecuted," and concluded that "although the written estimate itself did not contain a statement of demand, *M.I.D. was clearly apprised of the fact that a claim was being prosecuted against it, and the amount thereof.* 103 Idaho at 276, 647 P.2d at 732. (Emphasis added.)

 In the instant case, we conclude that the letter from G.A.B. Business Services to the City of Buhl did not satisfy the requirements of I.C. §§ 6–902, 6–906 and 6–907 or the case law interpreting those sections. The letter was not a "written demand to recover money damages from a governmental entity." At best, this letter informed the City of Buhl of an *insurance claim* made by the plaintiffs against Ranger Insurance Company. One could infer from this letter that Ranger possibly in-

tended to seek indemnification from the City of Buhl if it were liable on the plaintiffs' claim. One can assume an agency relationship between G.A.B. and Ranger and, perhaps, Ranger and the Flemings. This, however, means that the defendants, not the plaintiffs, allegedly placed the City of Buhl on notice of a possible claim for indemnification. However, this is not notice by the plaintiffs that they were bringing a tort claim against the city. Unlike *Smith* and *Huff*, the governmental entity herein involved was not apprised of the fact that a claim was being pursued against it by virtue of this correspondence. In fact, although plaintiffs eventually filed suit against Grimes, the City of Buhl was apparently never sued. This is not a situation like those in *Smith* and *Huff* where written demands to recover money damages were undeniably presented to the governmental entities and the only question presented involved the significance of technical, formalistic failings in those demands pursuant to I.C. § 6–907. Rather, this letter only stated that as a result of unspecified (and, as discussed in Part II above, what later proved to be unfounded) allegations of "safety defects and code violations ... it appears the City would be responsible." The letter went on to state "we are therefore placing you on notice of this pending claim." The only claim this placed the City on notice of was a claim by plaintiffs against the Flemings. While the letter suggests that the Flemings insurance company was considering going after the City at some *future* point for some undisclosed and, as yet, unascertained damages, this cannot be reasonably interpreted to constitute notice of a *present* claim by the plaintiffs against the City (because none existed).

Unlike the subrogation claim in *Smith*, notice by the Flemings' insurance company's agent of the daughters' claim against the Flemings did not serve to apprise the City of the existence of an action involving the daughters against the City. Knowledge of the fact of the daughters' suit against the landlords did not, and could not, necessarily entail knowledge of the fact of the daughters' suit against the governmental entity—the daughters were free to pursue their claim against the landlords and to obtain judgment in satisfaction of the claim against such defendants without bringing action against other conceivable defendants.

In *Smith*, the City had to have known that an underlying claim against it by an insured existed once it was apprised of the fact of a *subrogation* claim against it by an insurer (because of the nature of subrogation (discussed above)). Whereas here the City's knowledge of the claim against the alleged tortfeasor lead only to knowledge of that claim itself and to the *possibility* of a future claim against it by the landlord's insurer if the following scenario were to come to pass: (1) plaintiffs would have to establish liability; (2) liability would have to be predicated upon facts inculpating the City; and, (3) the landlord's insurer would have to muster sufficient standing and desire to pursue an indemnification claim against the City. No matter how liberally we construe the I.T.C.A. in plaintiff's behalf, we cannot see how this satisfies its notice requirements. Since the City had no actual notice, whether or not it was misled to its injury by failure to provide formal notice is irrelevant.

Even if the G.A.B. letter were, somehow, notice of a claim against the City, it is not notice of the *daughter's claim* and it is not notice *by* the daughter's. In *Smith* "notice was not rendered invalid or insufficient simply because it was made by Smith's subrogee rather than Smith himself." 99 Idaho at 622, 586 P.2d at 1066. Again, this was so because of the special relationship between an insurer and an insured in the context of subrogation.

> The right of subrogation is purely derivative as the insurer succeeds only to the rights of the insured, and no new cause of action is created. In other words, the concept of subrogation merely gives the insurer the right to prosecute the cause of action which the insured possessed against anyone legally responsible for the latter's harm.

16 G. Couch, Couch Encyclopedia of Insurance Law, § 61:37 (quoted in *Smith*, 99 Idaho at 622, 586 P.2d at 1066).

No such special relationship exists between G.A.B. (or Ranger) and plaintiffs.

The trial court properly rejected the argument that plaintiffs did not nor reasonably could have discovered the claim against Grimes until the July 18, 1986, Grimes deposition. First, reasonable diligence and investigation would have revealed the potential for a cause of action against the city. This is clear by the fact that G.A.B. found it reasonable to conclude the city may be liable only four months after the fire. Second, the notice of claim submitted January 7, 1987, was filed more than two years and four months after the fire. Surely, reasonable diligence and investigation would have led to the conclusion that the city might be liable within one year after the accident. In the present case, the injury and the city's role were apparent almost immediately after the accident.

■ The trial court found that appellants' attorney failed to make proper inquiry into both the facts and the law involved in suing a governmental entity, thereby subjecting him to Rule 11 sanctions with regard to the claim against Grimes. Rule 11(a)(1) authorizes the imposition of sanctions upon the ground that the signature of an attorney is a certificate that a pleading is:

(1) Well grounded in fact; and

(2) Is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

(3) That it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

Rule 11(a)(1), I.R.C.P.

Having failed to file a notice of claim against the city until January 1987, it is clear that plaintiffs' counsel failed to reasonably inquire into whether the amended complaint was warranted by existing law or a good faith argument for the extension,

modification or reversal of existing law. Plaintiffs' counsel simply failed to file a tort claim against the city within the requisite time. The order granting Grimes attorney fees and costs under Rule 11(a)(1), I.R.C.P. was proper. The trial court set forth its reason for granting the sanctions and specifically said:

I.R.C.P. 11(a)(1) is in all significant respects identical to F.R.C.P. 11. The advisory committee note to the 1983 amendments to the federal rules states that,

The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. (Citation omitted.) This standard is more stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation.

Advisory Committee Notes of 1983, *supra*, at 199.

It should be clear to any attorney that when suing a governmental entity special procedural requirements may be involved. It is entirely reasonable to expect an attorney to do some prefiling inquiry into both the facts and the law involved in suing a governmental entity. It is clear that Mr. Palmer failed to do this prefiling inquiry and, therefore, he is subject to sanctions under Rule 11.

. . . .

This court concludes that, not only was the hourly rate charged consistent with the prevailing rates in the Twin Falls area, but that the total number of hours spent in defending the suit against the Grimes was reasonable.

I.R.C.P. 11(a)(1) allows a court, upon the finding of a Rule 11 violation, to award a party the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. This court finds that the filing fees, copying fees and long distance telephone costs are reasonable expenses incurred because of filing of the amended complaint.

Mr. Palmer's motion to alter or amend the Rule 11 order will be denied in its entirety.

Costs to appellants as against Flemings; costs and attorney fees to Grimes as against appellants.

JOHNSON, J., concurs.

BAKES, C.J., concurs in Parts I and III and concurs in the result in Part II.

BISTLINE, J., concurs in Parts I and II and dissents as to Part III.

SHEPARD, J., sat but did not participate due to his untimely death.

BAKES, Chief Justice, concurring in part and concurring specially:

I concur in Part I and Part III (dismissal of the claim against Fire Chief Grimes). However, I concur only in the result in Part II which reverses the trial court's grant of summary judgment against the owners, Tom and Gloria Fleming.

Plaintiff's claim against the Flemings alleged three negligence theories: (1) breach of duty of reasonable care owed by a landlord to a tenant; (2) *res ipsa loquitur;* and (3) negligence per se—a violation of the Uniform Fire Code and/or I.C. § 6–320. The trial court granted summary judgment on all of the theories.

As to the *res. ipsa loquitur* theory, the trial court noted that, "It is conceded by all parties that the cause of the fire has never been determined." Accordingly, the trial court concluded that under our decision in *Jerome Thriftway Drug, Inc. v. Winslow,* 110 Idaho 615, 717 P.2d 1033 (1986), a claim based upon *res ipsa loquitur* will not stand. The majority opinion concurs in that conclusion, finding no basis for an inference of negligence merely from the fact that the fire occurred.

As to plaintiff's assertion that the defendants were negligent per se for violation of the Uniform Fire Code, the trial court correctly concluded that the provisions of the Uniform Fire Code were not applicable to the Flemings' premises, and therefore there is no basis for a negligence per se

claim. The majority opinion agrees with the district court's conclusion that the Uniform Fire Code does not apply to the building in question because it was constructed long before the fire codes came into existence, and therefore affirms the trial court's dismissal on the negligence per se theory.

The majority reverses the trial court's analysis of plaintiff's first claim, *i.e.,* that there is a material issue of fact over whether or not the Flemings, as landlords, breached a duty of reasonable care owed by a landlord to a tenant under this Court's decision in *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984), and therefore remands that issue to the district court for a trial on that issue.

In *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984), this Court modified the common law rule that "a landlord is generally not liable to the tenant for any damage resulting from dangerous conditions existing at the time of the leasing," in favor of a new "modern" rule which holds "that a landlord owes a duty to his tenants to exercise reasonable care in light of all the circumstances, and that it is for a jury to decide whether that duty was breached." 106 Idaho at 258, 678 P.2d at 50. However, in order to prove a breach of duty a plaintiff still must come forward with some evidence that the landlord did not exercise reasonable care in order for the case to be submitted to the jury. Otherwise, in every landlord-tenant situation, regardless of how carefully the premises might have been constructed and maintained, and regardless of how reasonably the landlord may have acted, the plaintiff would be entitled to have the case submitted to a jury. Accordingly, a plaintiff must submit some evidence of unreasonableness in the landlord's actions or a trial court properly should grant a landlord's motion for summary judgment.

I write only to express my concern that today's opinion might be misconstrued to hold that merely because premises are extremely old and not constructed to modern standards that a landlord is not acting reasonably in renting such premises to tenants. If that were the rule, landlords

would virtually become insurers of any premises which did not meet current building codes. I do not believe that is the law in the State of Idaho or the policy set out in I.C. § 6–320.

Rather, the plaintiffs must introduce some evidence which a trial court can reasonably conclude would violate a landlord's duty to the tenant. In the present case I believe the plaintiff has marginally done that. Most of the evidence contained in the affidavit of plaintiff's expert, Mr. Howard, was not relevant to the issues. As the trial court correctly pointed out, Howard's conclusions in his affidavit presupposed that the building was covered by the Uniform Fire Code, which it was not. Therefore, most of his affidavit and the conclusions contained therein were not admissible and could not be the basis of supporting the plaintiff's claim. Nor could the fact that the room which the plaintiff's decedent rented was at the end of a long hallway in and of itself constitute the basis of a claim. Unless we are prepared to state that all landlords are liable for injuries to tenants who lease premises which are not modern and not in compliance with all building codes, the old fashioned layout of a structure built in a different era cannot be the basis of a jury's finding of unreasonableness.

However, in the present case, the failure of the landlord to install smoke detectors, which the affidavit of plaintiff's expert Howard indicated could reasonably and inexpensively have given the plaintiff's decedent advance warning of any fire, is sufficient in my view to raise an issue of fact over whether or not the landlord violated his duty to exercise reasonable care in light of all the circumstances. Accordingly, I concur in the judgment only as to Part II.

BISTLINE, Justice, concurring and dissenting.

Having concurred in Parts I and II of Justice Huntley's opinion, I am unable to do so in Part III. My reasons are easily stated.

First, calendar dates are important. Mr. Roberts died by smoke inhalation on *August 22, 1984.* Less than four months later GAB on behalf of Ranger Insurance Co. (Flemings' liability carrier) wrote the City of Buhl under date of *December 20, 1984,* stating in part:

> Children and Heirs of Walter L. Roberts have made claim against T & G Flemming dba the Sport Shop Cafe for damages, funeral expenses and wrongful death of Walter L. Roberts totaling $152,000.00 as a result of the fire on 8–22–84.
>
> They are alleging safety defects and code violations. *From the facts before us, it appears the City would be responsible and we are therefore placing you on notice of this pending claim.*

(Emphasis added.) This was considerably in advance of the 180 day filing requirement mentioned in Justice Huntley's opinion.

Second, there are certain statutory provisions in the Idaho Tort Claims Act to which Justice Huntley, Justice Johnson, and Chief Justice Bakes pay no mind. Idaho Code § 6–903(e) provides:

> (e) For the purposes of this act and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent.

Idaho Code § 6–903(f) provides in pertinent part:

> The fact that a governmental entity may relieve an employee from all necessary legal fees and expenses and any judgment arising from the civil lawsuit shall not under any circumstances be communicated to the trier of fact in the civil lawsuit.

These two germane sections of I.C. § 6–903 are set forth first because of their order of importance. The first section, I.C. § 6–903(a) provides in pertinent part:

> (a) Except as otherwise provided in this act, *every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course*

and scope of their employment or duties, whether arising out of a governmental or proprietary function, where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho.

In addition to subjecting the entity to such vicarious liability, the ensuing section I.C. § 6–903(b) requires the entity to furnish a defense to an employee who is the sole defendant, and makes the entity responsible for the payment of the judgment recovered against its employee. Idaho Code § 6–903(b) provides in pertinent part:

*(b) A governmental entity shall provide a defense to its employee and be responsible for the payment of any judgment on any claim or civil lawsuit against an employee for money damages arising out of any act or omission within the course and scope of his employment ...*

Conversely, and obviously not needed, the next section covers the circumstance where the employee's act or omission does not arise out of employment with the entity. Idaho Code § 6–903(c) provides:

(c) The defense of its employee by the governmental entity shall be undertaken whether the claim and civil lawsuit is brought in Idaho district court under Idaho law or is brought in a United States court under federal law. The governmental entity may refuse a defense or disavow and refuse to pay any judgment for its employee if it is determined that the act or omission of the employee was not within the course and scope of his employment or included malice or criminal intent.

Idaho Code § 6–903(d) simply gives the entity the right to seek contribution or indemnity against an employee whose acts or omissions are beyond the scope and course of his employment.

With the addition of those statutory provisions, only one question need be asked in order to arrive at a proper resolution in Part III, namely, was there any finding, or suggestion, or even a bare scintilla of any evidence that Chief Grimes in performing

his functions of City of Buhl Fire Inspector was omitting or acting in any way which was not on behalf of his employer? The answer should need not be stated, but is a resounding: No, none whatever.