146 P.3d 691

**William L. FOSTER, Plaintiff–Appellant,**

v.

**KOOTENAI MEDICAL CENTER, an Idaho Public Service Corporation, Defendant–Respondent,**

and

**William H. Hall, M.D., dba North Idaho Urology, LLC, Defendant.**

**No. 32473.**

Court of Appeals of Idaho.

Oct. 12, 2006.

Nordstrom Nees, PS, Spokane, Washington, for appellant.  Shane O. Nees argued.

Paine, Hamblin, Coffin, Brooke Miller, Coeur d'Alene, for respondent.  Patrick E. Miller argued.

GUTIERREZ, Judge.

William L. Foster appeals from the denial of his motion to reconsider the grant of Kootenai Medical Center's ("KMC") motion for summary judgment. Specifically, Foster contends the district court erred in finding his claim letter submitted to the Idaho State Board of Medicine ("ISBM") was insufficient notice under the Idaho Tort Claims Act ("the Act"). We affirm.

## I.

### FACTS AND PROCEDURE

On October 9, 2002, Dr. William H. Hall, assisted by nurses employed at KMC where the surgery took place, performed a radical prostatetectomy on Foster. Subsequently, Foster began experiencing pelvic pain, and it was discovered on December 3, 2002, that a sponge had been left in his pelvic cavity during the course of the October 2002 procedure. The next day, Dr. Hall performed a procedure to remove the sponge.

On April 10, 2003, Foster, through counsel, submitted a claim letter[1] to ISBM advising the board of his "claim for medical malpractice against Dr. Hall and Kootenai County Medical Center," which is owned and operated by Kootenai County. The letter was not sent to KMC or to Dr. Hall. ISBM, however, directed correspondence to KMC notifying the hospital of pre-litigation screening proceedings, and included in ISBM's correspondence, as an attachment, was Foster's April 10, 2003, letter. KMC and Foster participated in ISBM pre-litigation screening on August 15, 2003, and after ISBM determined his claim had merit, Foster filed a complaint alleging malpractice against Dr. Hall and KMC on October 8, 2004. KMC responded by filing a motion for summary judgment arguing Foster had failed to satisfy the notice requirements of the Act. It specifically contended Foster had submitted "no document" on his behalf regarding the claim, and it made no mention of the April 10 letter to ISBM.

Following a hearing, the district court granted the motion and entered an order and judgment of dismissal on February 22, 2005. Specifically, the court found there was no question that Foster had never filed a formal notice of tort claim with KMC, a requirement of Idaho Code Section 6–906,[2] and instead "relied solely upon the information that has been generated by [ISBM] with respect to the request by the plaintiff of pre-litigation screening pursuant to Idaho Code." The court concluded that the letter from ISBM putting KMC on notice of the commencement of pre-litigation screening process was insufficient since a tort claim notice "needs to be submitted in the form of a claim."

After the dismissal of KMC from the suit, Foster's counsel discovered that in addition to putting KMC on notice of pre-litigation proceedings through a letter of its own, ISBM had forwarded to KMC a copy of

1. The letter states in relevant part:

   The purpose of this letter is to advise the Board, William H. Hall, M.D., and Kootenai County Medical Center of a claim for medical malpractice against Dr. Hall and Kootenai County Medical Center by our client, William Foster. His claim for malpractice arises from the surgery performed on Mr. Foster by Dr. Hall at Kootenai Medical Outpatient Surgery Center, Coeur d'Alene, Idaho, on October 9, 2002. Our client requests that the board set a date for pre-litigation screening of this matter to adjudicate the merits of his claim.

   The facts giving rise to this claim are as follows: [The letter continues, describing Foster's medical problems leading to the surgery, his post-surgery complications, and Dr. Hall's subsequent remedial measures].

   Mr. Foster claims that the medical treatment he received from William Hall, M.D. and the surgical staff at Kootenai County Medical Cen-

ter fell below the standard of care for similar physicians/health care providers in this locality. Mr. Foster, therefore, requests a hearing before the Idaho State Board of Medicine pursuant to the requirements of Idaho law, in conjunction with the filing of a lawsuit alleging the medical malpractice of Dr. William Hall and Kootenai County Medical Center.

2. Idaho Code Section 6–906 requires that:

   All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later.

Foster's April 10, 2003, letter as an attachment to ISBM's own letter on approximately April 18, 2003. Relying on this evidence, Foster filed an Idaho Rule of Civil Procedure 60(b) motion asking the court to vacate its summary judgment on the ground of newly discovered evidence. After a hearing, the district court denied Foster's request, finding that irrespective of KMC's receipt of Foster's April 10 letter, there was still "no ... precise notice" filed under the Act as the April 10 letter, just as ISBM's own letter, did not qualify as notice under the Act to justify vacating the court's earlier grant of summary judgment. The court also stated that even assuming the April 10 letter did constitute notice, the fact that it omitted a statement of damages rendered it inadequate under section 6–907. This appeal followed.

## II.

### ANALYSIS

A denial of an I.R.C.P. 60(b) motion to reconsider is reviewed for an abuse of discretion. *Alderson v. Bonner,* 142 Idaho 733, 743, 132 P.3d 1261, 1271 (Ct.App.2006). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Here, Foster's central contention on appeal concerns the interpretation of a statute, the Idaho Tort Claims Act, a determination over which we exercise free review. *Thomas v. Worthington,* 132 Idaho 825, 828, 979 P.2d 1183, 1186 (1999).

Idaho Rule of Civil Procedure 60(b) provides a means for an aggrieved party to obtain relief from a final judgment, order or proceeding directly from the district court. *Hoopes v. Bagley,* 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct.App.1990). Among other reasons, a party may seek such relief based on newly discovered evidence, which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b). I.R.C.P. 60(b); *Hoopes,* 117 Idaho at 1093, 793 P.2d at 1265. When seeking relief from a judgment under Rule 60(b)(2), a party must show the proffered information is material to the outcome of the case. *Simonovich v. Simonovich,* 110 Idaho 9, 10, 713 P.2d 445, 446 (Ct.App.1985). A judgment will not be set aside for newly discovered evidence unless the result is likely to change. *Id.*

The Idaho Tort Claims Act requires all claims against a political subdivision arising under the provisions of the Act to be presented to and filed with the clerk or secretary of the political subdivision. I.C. § 6–906. The claim-filing statute is usually the only sure and certain means by which a governmental entity may be alerted to potential liability arising from governmental activity. *Friel v. Boise City Housing Authority,* 126 Idaho 484, 486, 887 P.2d 29, 31 (1994). Additionally, the claim notice requirement serves the purposes of saving needless expense and litigation by providing an opportunity for amiable resolution among the parties, of allowing the governmental entity to conduct a full investigation into the cause of the injury in order to determine the extent of liability, if any, and of allowing the state to prepare defenses. *Id.*

On appeal, Foster contends the district court erred in its ruling that the newly-discovered evidence that KMC had received Foster's April 10 letter, did not constitute adequate notice under the Act to warrant granting a Rule 60(b) motion.[3] Specifically, Foster argues that by holding that the letter could not be considered adequate notice because of its omission of any specification of damages, the district court took an impermissibly narrow view of the Act's notice requirements under section 6–907.[4] However, an

---

3. In passing, KMC contends Foster's appeal is untimely. However, KMC provides no further explanation or authority on this point, and therefore we do not address the issue further. *Calla-*

*ghan v. Callaghan,* 142 Idaho 185, 190, 125 P.3d 1061, 1066 (2005).

4. In relevant part, I.C. § 6–907 provides:

examination of the district court's ruling convinces us this is not the appropriate inquiry. In both its original grant of summary judgment and its denial of Foster's Rule 60(b) motion, the court repeatedly emphasizes that no notice was given by Foster to KMC. Relying on *Mitchell v. Bingham Memorial Hospital*, 130 Idaho 420, 942 P.2d 544 (1997), the district court noted the distinction between requirements under the Act and the provisions regarding pre-litigation screening, such that notice of the latter does not satisfy the requirement for notice of the former. Thus, before examining the sufficiency of the content of any purported notice (as Foster argues) under section 6–907, there must be a determination as to whether notice under the Act was given at all, as required by section 6–906. Accordingly, we address the issue of whether a letter addressed to ISBM to comply with medical malpractice pre-litigation procedures which, unbeknownst to Foster, ISBM then forwarded to KMC, constitutes "notice" under section 6–906.

We consider *Blass v. County of Twin Falls*, 132 Idaho 451, 974 P.2d 503 (1999), dispositive of the issue. In that case, Blass was inexplicably burned during surgery at a hospital operated by the county. Initially, a representative from the hospital contacted Blass offering to adjust the hospital's bill. Thereafter, Blass's contact regarding the incident, including a letter from his attorney asserting hospital negligence and referencing the pain and potential disabilities relating to the burn, went through the hospital's insurance adjuster who then forwarded the communications to the hospital. Blass eventually filed suit, and the hospital was granted summary judgment on the basis that Blass had failed to file a formal written notice of tort claim with the hospital within the statutory time period. On appeal, while conceding he did not file formal written notice of his tort claim with the hospital, Blass argued that he substantially complied with the notice requirements of the Act when he submitted written communication of his damages to the hospital's insurance adjuster who forwarded the communication to the hospital. The Idaho Supreme Court disagreed, concluding that actual notice of the injury conducted through a governmental entity's insurance company does not comply with the notice requirements of the Act. *Id.* at 453, 974 P.2d at 505. The Court distinguished *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978), a case relied upon heavily by the appellant in the instant case, where it had previously held that although the contents of a letter written to the city by an injured motorist's insurance carrier did not comply with all the notice requirements enumerated in the Act, the contents were sufficient to constitute notice of the motorist's tort claim against the city. *Blass*, 132 Idaho at 453, 974 P.2d at 505. The *Blass* Court found *Smith* distinguishable because in *Smith*, the insurance carrier that gave notice to the city was the insurance carrier for the insured motorist and consequently had a subrogation claim, whereas the insurance carrier in *Blass* was the hospital's insurance carrier and there was *"no special relationship* between the insurance carrier and Blass which would substitute for *direct notice* to the governmental entity." *Id.* (Emphasis added).

■ In the instant case, KMC received Foster's April 10 letter through ISBM, an entity with which Foster had no special relationship, agency or otherwise. *Blass* makes clear that receipt of actual notice does not substitute for *formal notice originating from the aggrieved party*, or one with whom he has a "special relationship",[5] directly to the

All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim.... A claim filed under the provisions of this section shall not be held invalid or insuffi-

cient by reason of an inaccuracy in stating the time, place, nature or cause of the claims, or otherwise unless it is shown that the governmental entity was in fact misled to its injury thereby.

5. Certain third parties are allowed to file notice of a claim on behalf of a claimant. Idaho Code Section 6–907 specifically allows that "[i]f the claimant is incapacitated from presenting and filing his claim within the time prescribed or if the claimant is a minor or if the claimant is a

**430**

governmental entity. Thus, Foster cannot rely on the fact that KMC incidentally received a copy of his letter to ISBM, through no affirmative actions of his own, to satisfy his obligation under the Act. Notably, the relationships among Foster, ISBM, and KMC are significantly more attenuated than even those among Blass, the hospital, and the hospital's insurance carrier; in contrast to the relationship between the hospital and its insurance adjuster in *Blass,* in the instant case there exists no special relationship among any of the parties.

The Act's purpose of putting the government on notice of possible claims to which it may be subject, requires more than reliance on coincidental actions by a neutral third party. We conclude that Foster may not take advantage of ISBM's fortuitous decision to forward his letter to KMC to satisfy his obligation under section 6–906 of the Act; he was required to formally notify KMC and his neglecting to do so prevents adjudication of his tort claim. As a result, the district court was within its discretion in denying Foster's Rule 60(b) motion given that evidence of KMC's receipt of his April 10 letter would not change the district court's summary judgment ruling that Foster had not provided notice to KMC in satisfaction of the Act.

KMC argues it is entitled to attorney fees pursuant to I.C. § 12–121 and I.A.R. 41. An award of attorney fees may be granted under I.C. § 12–121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett,* 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct.App.1995). Here, we recognize it is a fine distinction between whether notice was given at all under section 6–906 and whether any notice given was sufficient in its content under section 6–907. The district court itself repeatedly mentioned that no notice was given directly to KMC and cited a case bolstering its position. The court, in its findings regarding the Rule 60(b) motion, proceeded to discuss the insufficiency of the April 10 letter as notice, not because it was not proffered directly to KMC, but because it did not contain the amount of damages claimed—a discussion which obfuscated the issue of whether notice was afforded in the first place. Foster, referencing this discussion, presented a persuasive argument regarding the substantial compliance component of section 6–907 to this Court, one which we did not reach, however, due to our disposition of the threshold issue. Accordingly, we conclude that Foster did not pursue this appeal frivolously, unreasonably, or absent foundation and decline to award attorney fees.

### III.

### CONCLUSION

Foster cannot rely on ISBM's forwarding of his letter to KMC to establish notice under the Act since Foster had no special relationship with ISBM as the forwarding entity and section 6–906 of the Act requires direct notice to the governmental entity. Thus, the district court did not abuse its discretion in denying Foster's Rule 60(b) motion since the discovery that KMC had received the April 10 letter would not have changed the outcome. We decline to award attorney fees, but pursuant to I.A.R. 40(a), costs are awarded to KMC.

Chief Judge PERRY and Judge LANSING concur.

nonresident of the state and is absent during the time within which his claim is required to be filed, the claim may be presented and filed on behalf of the claimant by any relative, attorney or agency representing the claimant." Additionally, the *Smith* court held this language did not mean a claim in all other cases must be filed personally by the claimant. *Smith v. City of Preston,* 99 Idaho 618, 619, 586 P.2d 1062, 1063 (1978).